## HANNAH *v.* DANIEL.

4-9864                                 252 S. W. 2d 548

Opinion delivered November 3, 1952.

Rehearing denied December 8, 1952.

*Milton McLees,* for appellant.

*Byron Bogard* and *Barber, Henry & Thurman,* for appellee.

HOLT, J. Appellants, R. H. Hannah and wife, are the owners of Lot 12, Block 107, Park Hill Addition to the City of North Little Rock, and appellees, the Daniels, are the owners of lots 4 to 10 inclusive, in the same block, appellees' lot 7 having a common boundary line with appellants' lot 12 on the rear. Appellants acquired title to lot 12 from the owners, J. C. King and wife, on June 16, 1950, by an unconditional warranty deed, and took possession July 25th thereafter.

Shortly after taking possession and moving into their new home, appellants observed Daniel making preparations for building a pond on the rear of his lot 7 and lot 11 and trespassing on the rear of appellants' lot 12. Upon inquiry, appellants learned from Daniel that he, Daniel, claimed a permanent easement by virtue of an oral (unrecorded) agreement which he had obtained (prior to appellants' purchase) from the Kings, appellants' grantors and other nearby lot owners, to use that part of appellants' lot in the northwest corner, measuring about 37 feet north to south along the west line and to a depth of about 25 feet over on appellants' property, on which to construct (and fence) a pond. The north boundary line of appellants' lot was 131 feet long (east to west) and the south boundary line 125 feet (east to west). The rear of the lot (north to south) was 48 feet wide and the front 60 feet.

When appellants objected to any trespassing by appellees, and began to fill in and improve the rear of their lot to their property lines, and build terraces, Daniel, by suit, sought to enjoin appellants. By cross-complaint appellants asked for permanent injunctive relief against Daniel to restrain and prevent him from building the pond, fence and dam, and from trespassing on their property (Lot 12). J. C. King and wife, appellants' grantors, were made defendants by appellants, and such

relief as equity might warrant was prayed against them on their warranty in their deed to appellants.

The trial court found the issues in favor of appellees (Daniel and King) and permanently enjoined appellants from interfering with appellees' alleged easement rights.

We hold that the trial court erred in so doing.

After a careful consideration of all the evidence, we have concluded that the preponderance thereof is against the Chancellor's findings.

It appears undisputed that appellants had no knowledge from the Kings or from any one of an alleged oral (unrecorded) agreement for an easement between the Kings, appellants' grantors, Daniel and other adjoining property owners. When the Kings executed their unconditional deed to appellants, they admit they did not tell appellants of any alleged agreement. In fact, at appellants' request they executed on the same day on which the deed was made, an affidavit containing the following provisions: "That I/we, Jesse C. King and Jessie I. King—, being first duly sworn, on oath state that I/we are the owners of the following described lands situated in the County of Pulaski, and State of Arkansas, to-wit: Lot Twelve (12), Block Hundred Seven (107), PARK HILL ADDITION to the City of North Little Rock, Arkansas.

"I/we further certify, that there is no adverse occupant of said lands; that there are no unrecorded options to purchase, sales contracts, or lease agreements outstanding affecting said property; and that there have been no improvements made thereon during the past 100 days for which a Mechanic's or Materialman's lien may be filed." (Duly signed and acknowledged by the Kings).

In these circumstances, appellants, having no actual notice of the alleged agreement, unless the preponderance of the evidence shows that they had what amounted to a constructive notice of the existence of a claimed ease-

ment, then they were not bound thereby. "A purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises." 17 Am. Jur., § 130, p. 1018.

We announced the rule in this language in *Waller* v. *Dansby,* 145 Ark. 306, 224 S. W. 615: "The general rule is, that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty as in the case of vendor and purchaser, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding. Or, as the rule has been expressed more briefly, where a man has sufficient information to lead him to a fact, he shall be deemed cognizant of it."

With this rule in mind, we examine the evidence.

At the time of appellant's purchase, he observed the physical condition of his lot. It was small and obviously crowded with a two-story residence with basement. It dipped rather sharply to the rear and the back end was largely covered with weeds and underbrush. It was low and swampy and where the two lots met a small ravine had formed affording drainage. For a distance of about 31 feet on appellants' lot across the southerly part of the ravine, Daniel had erected a small earth dam. A fair perspective is afforded us by many pictures, maps and plats in evidence.

At the time of appellants' purchase no pond was in process of construction on appellants' property. There was, however, at the time of purchase, in the northwest corner of the rear of appellants' lot also a small narrow rock wall, a few feet from appellants' west property line and parallel with it, extending apparently about 18 feet over on appellants' lot and had the appearance of a retaining wall. As to this wall and dam, Dr. Hannah testified: "Q. Prior to that time had Mr. Kooistra attempted to tell you where the corner of the property was located? A. The only thing he said, one corner was

back by the telephone pole and the other one off to the right forty-eight feet. That is all I got out of him. Q. That is all he told you? A. That is the only information he gave me. Q. Now then, was this structure, in its character as a dam, I mean by that a devise intended to act as a barrier to the flow of water, was it visible to you as such on the occasion that you looked the property over? A. It did not. It looked like maybe somebody had built a retaining wall there and left off the lot below. Q. That is the lot south of yours? A. South of me. Q. Or the Stacy lot and the lower slope of that lot does have the appearance of being about surface of that rock wall? A. That is right, that rock wall. Q. Now then, when did you find out that Mr. Daniel claimed the right to maintain this thing as a dam to impound water and make a lake upon part of your property? A. After I had it surveyed I had markers placed and one evening I came home and my wife said they had been in that place back there with bulldozer and knocked my marker down and running around there moving the mud, churning that place up. . . . Did you have a conversation with Mr. Daniel? A. I did. Q. What was it about? A. I asked him what it was down there. He told me he was going to build a pond. I told him I didn't want any pond on the back end of my property. Q. And what was his response to that? A. He said I could be a good neighbor or be an ass. . . . Was there anything in the outward appearance of that property there at the time you bought it that would cause you to believe that then, or any time in the future, it was intended that a lake or pond would be made back there which would be on your property or anybody else's property? A. Certainly not, it is not large enough. There isn't sufficient space to make a lake of any kind without having stagnant water.''

As indicated, we think the preponderance of the evidence is against appellees' contention that the physical condition of lot 12 at the time of appellants' purchase was such, by reasonable inspection, to make it apparent of the existence of a servitude that would charge them

with notice of an easement. The narrow rock wall on appellants' property did not constitute adverse holding by Daniel sufficient to put Hannah on notice of any claim of an easement.

The decree is reversed and the cause remanded with directions to grant appellants the injunctive relief prayed in their cross-complaint.

WARD, J., dissents.