EDMONSON *v.* SANSING.

5-19 256 S. W. 2d 323

Opinion delivered March 30, 1953.

*F. O. Butt* and *John H. Shouse,* for appellant.

*Henley & Henley,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellants, Joe and Clyde Edmonson, to quiet their title to a 180-acre farm that was owned by the plaintiffs' brother Claude at his death intestate in 1951. Claude Edmonson was also survived by another brother, seven sisters, and the children of a deceased sister, all of whom were defendants below. The plaintiffs claimed title under an alleged oral contract by which Claude agreed to leave them all his property in return for the rendition of certain services during the rest of Claude's life. The chancellor dismissed the complaint for want of equity.

It has long been the rule that both the making and the performance of a parol contract for the conveyance of land must be proved by clear and convincing evidence. *Lay* v. *Lay,* 75 Ark. 526, 87 S. W. 1026. This rule is a practical precaution that has been widely adopted in various situations involving such an opportunity for fraud that it is desirable to require a standard of proof more strict than the mere preponderance of the testimony. Wigmore on Evidence, § 2498.

Counsel for the appellants do not seriously question the wisdom of requiring cogent evidence in a case of this kind; but they think the rule erroneous for the reason that it is "judge-made" law, resting upon neither the constitution nor a statute. We have not the slightest hesitancy in approving a doctrine that depends upon judicial precedent rather than upon legislation. The Arkansas legislature has never attempted to codify the entire body of the law or even any substantial part of it. Consequently most cases must be decided by common law principles if they are to be decided at all; it is seldom that the mere reading of a statute furnishes a conclusive answer to the questions presented.

As a matter of fact, this case is a good example of the fallacy in the appellants' argument; for they themselves are relying solely upon judge-made law. The only pertinent statute, the Statute of Frauds, requires that con-

tracts for the sale of land be in writing. Ark. Stats. 1947, § 38-101. To escape the statutory requirement of a written memorandum the appellants depend upon the familiar doctrine of part performance—a purely judge-made rule that was evolved many years ago by courts of equity. This exception to the statute is, and should be, safeguarded by the requisite of clear and convincing proof. We see no reason to abandon that safeguard by substituting the alternative rule that the chancellor be guided by the mere weight of the evidence, a standard that is also of entirely judicial origin.

On the merits the appellants' proof lacks both clarity and conviction. Some years before 1940 Claude Edmonson suffered a brain injury that resulted in his having occasional convulsive seizures. These attacks, which came without warning, were sometimes light and sometimes severe. The more serious seizures caused him to fall and to remain unconscious for an hour or two; the mild attacks were hardly noticeable.

According to the plaintiffs, in 1940 Claude proposed the contract on which this suit is based. By this agreement the plaintiffs bound themselves to the performance of rather vague duties. They were to give Claude "all attention we possibly could when it was necessary." They were also to supply financial aid "according more or less to our financial conditions." There is not much proof that any material pecuniary assistance was ever rendered, as Claude successfully managed his own affairs except during the brief duration of his attacks. Clyde Edmonson produced a check or two to show that he paid medical expenses for his brother, but it was later shown that these checks were drawn against a joint account which was opened in 1944, to which Claude contributed $3,300 and Clyde contributed nothing.

The services rendered by Joe and Clyde did not noticeably exceed the standard of conduct that might be expected among brothers. There was, according to the plaintiffs' own proof, little that any one could do for Claude during an attack. Clyde said that one of the most

important things was to put a pillow under the victim's head; Joe's wife testified, "There wasn't anything you could do about it. . . . We were advised to remove his teeth the first thing, if we could get them; then lay him down if he was not already down; that's what we would do." There is abundant evidence that other members of the family, and strangers as well, often ministered to Claude when neither of the plaintiffs was present at a seizure. Clyde, it is true, lived in Claude's home from time to time and was able to give aid during those visits, but he was then being supported at Claude's expense or was engaging in business ventures which Claude financed by mortgaging his property to a bank. Too, Clyde spent fifteen months in the state of Washington, leaving Joe to discharge the duties required by the contract.

There are other facts that make doubtful the existence of the agreement. Such a contract would indicate that Claude had great confidence in his brothers' reliability, but at Claude's death there was pending a suit in which he was attempting to recover delinquent rent owed by Clyde. Clyde's explanation is that his duty to pay the rent in cash was satisfied by the performance of services for Claude, most of these services being the same as those required by the contract now in issue. After Claude's death there was a family meeting at which neither Joe nor Clyde even hinted that the estate belonged to them exclusively. There is, on the contrary, evidence that Joe expressed his hope that the estate be settled as soon as possible so that a needy sister might receive her share. At this meeting neither plaintiff objected to an informal arrangement by which the oldest sister, Ada Sansing, was put in charge of the estate, nor do they now desire an accounting for the management of what they say to have been their property all along. There is also the fact that the plaintiffs introduced checks written by Claude in purported payment of board accruing during prolonged visits in Ada's home. Mrs. Sansing denied having charged her brother for his meals, and when the bank's photographs of the checks were examined during a recess in the trial

it was found that the notations of "Board" had been added after the instruments were paid by the bank.

There is also much testimony supporting the plaintiffs' position. The strongest circumstance in their favor is the fact that Claude did at one time execute a will leaving all his property to Joe and Clyde, although the appellees established a credible reason for the making of this will and for the fact that it was not in existence when Claude died. There might be some doubt as to where the bare preponderance of the evidence lies, but we are all of the opinion that the appellants' proof lacks that high degree of persuasiveness that is required in a case of this nature.

Affirmed.