TEDFORD *v.* TEDFORD.

5-652                                277 S. W. 2d 833

Opinion delivered April 18, 1955.

*Alfred Featherston,* for appellant.

*Steel & Steel,* for appellee.

GRIFFIN SMITH, Chief Justice.   W. A. Tedford, 64 years of age, sought to foreclose a mortgage on 103 acres lying in Howard and Hempstead counties.   The tract was his parents' homestead when the mortgage was executed

in April, 1928. The plaintiff's father, F. M. Tedford, died in 1933. His mother, Dossey Tedford, was living when testimony resulting in this appeal was heard.

The mortgage spelled out an indebtedness of four hundred fifty-three dollars, but in numerals it was given as $433. A ten percent note due April 10, 1930, with interest from date, is mentioned. The original note and mortgage were lost, but the recorded instrument revealed marginal indorsements attesting payments varying from $40 in 1932 to $190 in 1948. The last was $47.88 Feb. 12, 1953. The eight payments total $612.88.

The net balance with interest compounded was claimed to be $3,461.12. When evidence disclosed that the indorsements did not represent payments made by either obligor with the intent that the money should be applied on the mortgage a non-suit was taken. This was followed on April 12th, 1954, by Dossey Tedford's petition for partition. She was joined by others who claimed interests in the land. All sought to have the 1928 mortgage set aside because of laches, limitation, and want of consideration. It was conceded that Dossey Tedford owned a life estate. Sons and daughters of F. M. and Dossey Tedford who had died left heirs. All of the litigants were of age. It was agreed that the widow's life estate should be determined according to Act 122 of 1951, Ark. Stat's, §§ 50-701 et seq., supp.

The defendant's answer denied that he had been guilty of laches, or that the mortgage was barred by limitation. Affirmatively he pleaded that as a mortgagee in possession he had made valuable improvements for which, in any event, credit should be given; nor, said he, was the mortgage unsupported by a consideration.

The court found that the property was not susceptible of division in kind and directed that it be sold. The commissioner's report shows an acceptance of the best offer, $1,275. This was approved. Appellant, as purchaser, acquiesced in all of the court's orders except the basis of distribution. The widow's life estate was commuted to yield $208.90, a sum all are willing she should receive.

Appellant was allowed $250 for betterments. His position is that the competent proof preponderated to sustain various figures he discussed, showing expenditures in cash or labor of between fourteen and fifteen hundred dollars. He also insists that if limitation would otherwise bar recovery of the mortgage debt, nevertheless a defendant who does not invoke the court's aid in quest of affirmative relief will be permitted to show that the plaintiff is indebted to him, and to the extent of the demand thus made receive credit by way of offset; and this is true even though in a direct action it could be defeated on a plea of limitation. *Brown* v. *Missouri Pacific Transportation Co.*, 189 Ark. 885, 75 S. W. 2d 804. In the Brown case the term "recoupment" is used.

Appellant and some of his brothers and sisters had lived with their mother and father. Some of the brothers for a while contributed as best they could to household expenses, but when the old gentleman's usefulness became impaired on account of partial blindness the other brothers withdrew their support, whereupon appellant, according to his testimony, volunteered to assume that burden. Until 1936 or 1937 he had lived with his parents. He claims that in 1920 he was making good money—$15 to $25 a day. From 1937 he was away, having purchased the old Pat place at Muddy Ford. In December, 1952, he began making homeplace repairs. A further contention is that four rooms attached to the 7-room family residence were his through consent of his father that the extension be built. A barn was constructed, but it burned and by inference appellant collected insurance. He claims to have built a new fence around 83 acres, that he put woodland into cultivation, and in other respects added to values.

Although these improvements were begun in December, appellant did not move into the house until January, 1952. When this program of remodeling and development was begun five of the heirs wrote, protesting the action. Appellant claims that most of the work had been finished when he received the letter, dated February 18, 1953. He farmed the land from 1930 to 1936 or 1937.

1038

The evidence is in hopeless conflict regarding payments indorsed on the recorder's marginal records. Following three of the entries the word "Mother" has been written with a pen. Dossey Tedford testified that none of these was by her; that the payments were not made, but on the contrary she loaned her son $290, none of which was repaid. Appellant made several contradictory statements, but on cross-examination admitted that his mother had not made any payments to him with directions, hence there could have been no instruction respecting mortgage indorsements.

In explaining why $433 was mentioned in the mortgage appellant said that when his brothers refused to extend further assistance to their parents, F. W. Tedford made the comment, "Son, if you can take care of Ma and me, we can take care of you." That was the only time anything was said about the support problem, and the mortgage was not mentioned in the conversations.

F. W. Tedford owed Dr. J. S. Hopkins several hundred dollars. October 10, 1927, Dr. Hopkins wrote appellant that the balance was $433.90. Interest to Nov. 10th would be $43.39. Seemingly a statement for professional services was enclosed, for a suggestion in the letter is: "Take care of the interest and the doctor bill and the note can run for another year." Appellant thought that he later paid Dr. Hopkins $286, but conceded that the obligation (represented by a mortgage on the farm) was not fully discharged. The original debt was $800. Appellant had not paid taxes on the property.

While testifying regarding circumstances attending execution of the mortgage appellant seeks to foreclose he was asked: "You mean [that your father and mother] just put down $433 out of the clear sky?" Answer: "That's right: they didn't owe me anything." This declaration was immediately modified with: "No, nothing more than just what you heard me say awhile ago." And later: "They didn't owe me anything. I agreed to take care of them and pay that off."

While being interrogated regarding credits he caused to be indorsed on the mortgage record appellant verified $25 received in April, 1936, $75 January 20th, 1944, and $60 Sept. 10, 1945. He insisted that the money came from his mother, but that other items accrued from "operation of the place."

When asked if it were not true that he had made marginal indorsements "just about every five years . . . to avoid running into the statute of limitation," appellant replied, "I tried to keep it in the bounds, yes." Question: "You made a note and mortgage to Dr. Hopkins yourself, didn't you?" A. "Yes." Q. "Then you assumed a note and mortgage from your mother and father?" A. "No! They said, 'If I would continue to take care of them.' "

Appellant's contention that he is a mortgagee in possession and therefore entitled to the value of betterments cannot be sustained. Assuming that from 1928 until 1937 he exercised a degree of dominion, the most that can be said is that until his father died in 1933 the activities were permissive rather than proprietary. Appellant concedes that his father asked him not to take any action respecting foreclosure until both mortgagors were dead. There is argument that shortly before 1950 Dossey Tedford abandoned the property by moving to another home, but there is scant proof of an intention to relinquish homestead rights. Appellant was not on the land when his mother moved.

If assumption of the Hopkins note formed part of the consideration for the $433 mortgage, an answer is that appellant did not pay it. If, upon the other hand, care of his parents was the consideration, proof is sufficient to sustain a finding by the Chancellor that the obligation was not met. Indeed Mrs. Tedford appears in the role of a contributor to her son. If the sums she says were advanced are added to income from the property—inferentially referred to in the testimony as rents—the likelihood that advantages to appellant overbalanced his asserted expenditures presents a factual problem.

The slender contractual thread upon which appellant seeks to sustain a consideration for his parents' mortgage is the father's asserted statement that "If you can take care of [us, we] can take care of you." There having been no established consideration for the obligation of $433 recited in the mortgage, reliance is upon parol evidence. Both the making and performance of such a contract to convey land must be established by clear and convincing evidence. *Edmonson* v. *Sansing*, 221 Ark. 862, 256 S. W. 2d 323. Language somewhat stronger was used in *Krantz* v. *Krantz*, 203 Ark. 1147, (unreported) 158 S. W. 2d 926. Expressions from *Walk* v. *Barrett*, 177 Ark. 265, 6 S. W. 2d 310, are copied from Mr. Justice McHANEY's opinion, the action being for specific performance of a parol contract to execute a will: "The rule of law applicable in such cases," says the opinion, "is that before a court of equity may grant specific performance . . . the evidence of such agreement must be clear, satisfactory and convincing. It must be so strong as to be substantially beyond reasonable doubt."

We have said that the only effect of a consideration clause in a deed is to estop the grantor from alleging that the instrument was executed without consideration, but for every other purpose it is open to explanation, and may be varied by parol proof. *Hayes* v. *Sanger*, 218 Ark. 716, 239 S. W. 2d 22.

Conceding that in an appropriate case the right of offset through use of a debt barred by limitation should be recognized, there can be no application here for the reason that the mortgage fails. Neither can we say that the Chancellor's determination that legitimate permanent improvements appellant says he made enhanced the value of the property more than $250.

Affirmed.