BENTON ET UX *v.* FULTZ ET UX

5-3975                                          406 S.W. 2d 699

Opinion delivered October 10, 1966

*Gaughan* & *Laney,* for appellant.

*Streett* & *Plunkett,* for appellee.

OSRO COBB, Justice. This is a case where adjoining owners of residential properties in Camden are in dispute as to the use of a driveway situated between their residences. The record indicates that the dispute has not thus far affected the neighborly relationship of the parties. The record also indicates that the positions urged by the parties have been taken in good faith, the aid of the courts being invoked to set the dispute at rest.

*Introductory Facts:*

In 1957 Sue Moore Olsen owned all of the properties which were subsequently acquired by the parties to this action. On May 18, 1957 the tract now owned by appellants was conveyed by warranty deed to John G. Malone and Pauline H. Malone, the deed containing the following easement reservation:

> "Grantor and Grantee hereto mutually agree that easements ten feet in width and extending back forty feet in a westerly direction from Harrison Avenue shall exist for the mutual benefit of the property herein conveyed and the property lying North and the property lying South of the parcel herein conveyed; the northerly line of the property herein conveyed to be the center of such easement for the property herein conveyed and the property lying immediately North thereof and the southerly line of the property herein conveyed being the center of the easement for the benefit of the property herein conveyed and the property lying immediately South, such easement being for ingress and egress."

On June 6, 1958 Sue Moore Olsen conveyed by warranty deed to appellees the property joining that previously conveyed to the Malones. The juncture line of the two properties, particularly toward the rear of the resi-

dences, was marked by a rough and irregular terrain with a deep ditch, making the area impassable by vehicle and even difficult to walk upon. Appellees desired to erect a retaining wall some four and one-half feet high on the Malone property and to bulldoze the area to level same in order to control water drainage for the protection of both properties; and also to extend the driveway from the 40 feet in depth, as set forth in the quoted easement, to a point reaching the rear of their house so that their cars could be parked there and to avoid blockage of the driveway between the properties. All of said improvements were made at a substantial expense to appellees, and at a time prior to appellants' entry upon the scene. The following factual affidavit of John G. Malone, predecessor in title to appellants, appears in the record:

"June 22, 1964

"When George Fultz purchased the property adjoining mine, we had a mutual agreement that, if he leveled the property behind his house and built up the drive-way between our houses and made it passable, that the drive-way would be kept open for the use of both families.

"It was also agreed that George would build up to the same level as his property that part of my back yard on the south side of the storm ditch. This was done by building a retaining wall along the south side of the storm ditch. All of this was done at no expense to me.

/s/ John G. Malone"

On the 9th day of May, 1959, the Malone property was acquired by appellants, who immediately moved into the residence thereon. For some five years thereafter the improved and extended driveway was used without complaint. On one occasion the parties jointly contributed to the purchase of fragments of asphalt shingles, which were used in surfacing the driveway.

The driveway was contoured so that the water would move down the center and away from the residences. When the driveway needed some further repairs, appellees decided to cover it with gravel and Mr. Benton, one of the appellants, agreed to the use of gravel, but stated that he did not know whether Mrs. Benton would have any objection. It developed that Mrs. Benton objected to the gravel that was being placed on the driveway and thereafter appellants placed a series of concrete blocks along the portion of the driveway nearest their residence and in such a position as to prevent appellees from driving their vehicles upon said driveway.

Appellees brought suit to enjoin appellants from blocking the driveway and for other equitable relief. After hearing the court entered a decree declaring a permanent servitude of the land upon which the driveway had been constructed for the use and benefit of appellees in vehicular access to their property. From this decree comes this appeal.

Appellants urge three points for our consideration:

## POINT I

"The trial court erred in finding that appellants' predecessor entered into a valid and enforceable oral agreement with appellees wherein appellees acquired an easement in perpetuity over a portion of land subsequently acquired by appellants."

Appellants concede that there was some loosely defined oral agreement or arrangement between appellees and the Malones as to the extension of the existing driveway, leveling the back yards, etc. However, appellants insist, and rightly so, that any oral agreement affecting an interest in land must be established by clear and convincing evidence before it can be enforced. *Tedford* v. *Tedford*, 224 Ark. 1035, 277 S. W. 2d 833 (1955); *Jeffries* v. *Meredith*, 219 Ark. 654, 243 S. W. 2d 942 (1951); *Rolfe* v. *Johnson*, 217 Ark. 14, 228 S. W. 2d 482 (1950).

Performance of the alleged oral agreement was, completed in a matter of days, thus removing the oral agreement, if any, from the time provision of our statute of frauds. Ark. Stat. Ann. § 38-101, (Repl. 1962).

While appellants did not couch their testimony as to the oral agreement with the Malones in legal terms, such as servitude in perpetuity, they did make it clear that all of the improvements were made as a result of an oral agreement that they could thereafter use the extended driveway in driving their cars to and from the rear of their house. We cannot rationalize such an extensive project of improvements as those actually completed by appellees, including major construction of a retaining wall on the Malone property itself, without an agreement with the Malones. Neither can we rationalize appellees' expenditure of such substantial sums to make the improvements, including the extension of the existing driveway, absent some understanding with the Malones that they could thereafter use the driveway. This is a case where the improvements made by appellees, particularly those as to the driveway, were such as to speak for themselves as to the intent of the adjoining owners. Significantly, the record is silent as to any complaint on the part of the Malones, who were in possession of their property for a considerable length of time after the improvements were made.

We have concluded that the trial court was justified in finding that the oral agreement as alleged by appellees was supported by clear and convincing evidence. We have reached this conclusion without reliance upon the affidavit of facts of Mr. Malone as it appears in the record. The affidavit was not proper evidence but does serve to indicate that he would have corroborated appellees' claim as to the oral agreement, if called as a witness.

The finding of the trial court that an enforceable oral agreement as alleged in appellees' complaint had been established is supported by a clear preponderance

168

of the evidence in this case and will not be disturbed here. *Spears* v. *Rich,* 241 Ark. 15, 405 S. W. 2d 929 (1966); *Orrell* v. *E. C. Barton & Co.,* 240 Ark. 211, 398 S. W. 2d 685 (1966).

We therefore find no merit in appellants' contentions under their Point I.

## POINT II
"The trial court erred in ruling that at the time appellants acquired their property they had actual, or constructive, knowledge of any adverse claim to an easement over a portion thereof by appellees."

Appellants erroneously assume that appellees bottomed some of their claims to unimpaired use of the driveway in controversy upon elements of adverse and hostile possession. On the contrary, appellees have bottomed their claims upon an oral agreement with appellants' predecessor in title.

Appellants challenge the enforcement of the oral agreement, if any, because of lack öf actual or constructive notice to appellants. All of the improvements had been made before appellants purchased the property. They, therefore, had complete and actual notice of what had been done. Furthermore, there was unchallenged use of the driveway, benefiting appellees primarily but appellants as well, for some five years. The dispute, when it arose, did not involve a challenge as to the driveway easement but involved whether the driveway should be completely surfaced with gravel. Admittedly, the dispute grew into enlarged claims by appellants thereafter.

We have held that a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises. *Hannah* v. *Daniel,* 221 Ark. 105, 252 S. W. 2d 548 (1953).

We therefore find no merit in appellants' contentions under their Point II.

## POINT III

"The trial court erred in ruling that appellees had acquired a permanent servitude over a 5 foot strip of appellants' land; and in directing appellants to remove their concrete retaining wall; and in enjoining appellants from interfering with appellees' use of such strip."

Appellants here primarily rely upon our decision in *West* v. *Bain,* 184 Ark. 641, 43 S. W. 2d 245 (1931), wherein we held that a purchaser of a lot is not bound by an oral agreement between her grantor and an adjoining property owner for construction of a common driveway, she having no notice of such agreement at the time of the purchase.

In the *West* case, we noted: (a) that the proposed driveway had not been constructed and (b) that the purchaser had been definitely assured that there were no outstanding agreements with the adjoining property owners. These circumstances clearly distinguish the West case from the present case. Furthermore, some inference may be drawn from the West case that had the driveway been completed, putting the purchaser upon full notice of same, she could have been bound thereby. In *Wynn* v. *Garland,* 19 Ark. 23 (1857), certain drainage ditches were constructed by adjacent plantation owners in reliance upon an oral agreement that when completed each party would be allowed continuous use of the ditches to drain their respective properties. Wynn closed the main ditch on his land, making the ditching done by Garland valueless. The court said:

"We regard it as a question of immateriality in this inquiry, whether a part of all the ditches are now, or were, at the time of their construction, on the land of Garland, or whether the license was given to Garland by Wynn to construct them in the first place without consideration, for we have seen that the ditches were made in part by Garland, that the labor bestowed in this way was of value, and that

they were made under the agreement and to the knowledge of Wynn, whilst they were progressing; and we have held that the expenditure of money under these circumstances, will be regarded in equity as so much consideration paid by the grantee to the grantor of the license, inducing the expenditure, and has the effect of turning such license into an agreement which will be executed in equity.''

We also quote a significant headnote from the *Wynn* case:

''But though the grant of an easement is within the statute of frauds, and must be in writing, yet a parol grant executed, will be upheld under the same circumstances, and on the same principles that a parol contract for the sale of land would be—as where the grantee has made improvements in good faith, under the grant, or expended money or capital in its enjoyment.''

In *Chaney* v. *Martin,* 205 Ark. 962, 171 S. W. 2d 961 (1943), we quoted with approval the following:

''An oral grant (of an easement) will be upheld where it is accompanied by consideration, action in reliance on the grant and by grantees being permitted the granted use.''

See also 28 *C.J.S.,* p. 678; *Kellums* v. *Richardson,* 21 Ark. 137 (1860); *Neil* v. *Neil,* 172 Ark. 381, 288 S. W. 890 (1926).

Appellees have called our attention to the following quotation from Thompson on Real Property, Vol. 2, § 225 (Repl. 1961):

''A license for a valuable consideration is regarded as irrevocable when the licensee has incurred expense under it or there is a mutual agreement to do certain acts and this has been fully performed on

one side. This rule is based on two distinct theories; the first being that when the licensee expends large sums of money making the improvements without objections by the licensor, the license becomes executed, so that what was at its inception a license is ultimately transformed into a grant and, therefore, irrevocable. The second theory is based on the ground of equitable estoppel and follows the rule that a court of equity will not permit the licensor to cloak himself with the statute of frauds, and under its cover, perpetrate a fraud upon the licensee by revoking the license.''

We have concluded that there is no merit in appellants' contentions under their Point III.

Having found no merit in any of the contentions of appellants, the decree of the Chancery Court is affirmed.

Affirmed.