Eugene T. KELLEY and Joye R. Kelley *v.* William F. WESTOVER, Patricia M. Westover, and William E. Westover

CA 96-412                                        938 S.W.2d 235

Court of Appeals of Arkansas
Division II
Opinion delivered February 19, 1997

*Gill Law Firm*, by: *Glenn E. Kelley*, for appellants.

*Stephen Lee Wood P.A.*, by: *Stephen Lee Wood*, for appellees.

JOHN F. STROUD, JR., Judge. This is a prescriptive easement case in which appellants, Eugene and Joye Kelley, claim a prescriptive right of passage over property belonging to appellees, William F. Westover, William E. Westover, and Patricia M. Westover. The chancellor determined that appellants had sporadically crossed appellees' property for more than twenty years, but that their use of the property was not continuous and uninterrupted, and therefore had not established a prescriptive easement. We agree and affirm.

In 1951, appellee William F. Westover purchased twenty acres of unimproved property in Benton County. He subsequently executed a warranty deed that conveyed the twenty-acre tract to his son and daughter-in-law, appellees William E. and Patricia M. Westover, but he retained a life estate in the property. In 1971, appellants, Eugene and Joye Kelley, purchased property adjacent to the twenty-acre tract. Approximately three years later, appellants built a house on their property. Mr. Kelley testified that

eighty to ninety percent of the time, his family used their own driveway to get to and from Walnut Valley Road. Occasionally, however, they used a portion of Mr. Westover's property as an alternate access to and from another road, Cloverdale Road, particularly in times of bad weather because their driveway is very steep. This use continued for an approximate twenty-year period.

During this twenty-year period, appellees used various methods to keep appellants from crossing the property. For example, they asked appellants by telephone and in person to stay off the property; they ran barbed wire across the road; they replaced barbed wires cut by appellants; they removed a gate installed by appellants and replaced the fence wire; they piled brush, logs, and other debris across the road; they posted no trespassing signs; they called the sheriff's office; and they felled trees across the road. The following colloquy between Mr. Kelley and appellees' counsel is demonstrative:

> Q. [Appellees' counsel]: When do you believe the Westovers had knowledge that you were crossing their property to Cloverdale Road?
> A. [Eugene Kelley]: From the very beginning because they kept putting debris in and putting up the wire and we kept taking it down. When I took the wire down, I didn't go back, unless — if I took it down and like I was in my car, you know, I might put it back up again, but, generally, like I said, I had a front end loader. When I thought he was doing it just to close off the road, then I just drove through it. I would go down there with my front end loader and just drive right through it because most of the times when he did that, he also put brush on it and I just took care of it all at one time.
>
> . . .
>
> Q. So, I understand from your testimony that since, from the very beginning, when you purchased your property, Mr. Westover, or people acting for him, someone consistently had been trying to thwart your attempts to use that pathway down Cloverdale Road?
> A. Yeah.

In 1995, appellants filed a complaint in chancery court asking that appellees be "enjoined from interfering with [appellants'] use

of the roadway [appellants] have prescriptively used more than twenty years. . . ." The chancellor found in favor of appellees, and this appeal followed.

Appellants raise four points of appeal: (1) that the chancellor erred in finding the appellants' use of the property was too sporadic to meet the requirement of continuous and uninterrupted use; (2) that the chancellor erred in finding the location of the claimed easement was not clearly defined; (3) that the chancellor erred in relying upon a particular case; and (4) that the chancellor erred in not granting the appellants' prayer for a prescriptive easement over the appellees' property. The first and last of these issues control this appeal and can best be discussed together.

■■ A prescriptive easement may be created only by the adverse use of privilege with the knowledge of the person against whom the easement is claimed, or by use so open, notorious, and uninterrupted that knowledge will be presumed, and the use must be exercised under a claim of right adverse to the owner and acquiesced in by him. *Childress v. Richardson*, 12 Ark. App. 62, 670 S.W.2d 475 (1984). The following explanation is helpful in understanding the concept of acquiescence in establishing a prescriptive easement:

> The foundation of a right by prescription is acquiescence of the owner of the servient tenement in the acts relied on to establish the easement by prescription. Acquiescence is here used in its ordinary sense; it does not mean license or permission in the active sense, but means passive assent or submission, quiescence, or consent by silence.
>
> . . .
>
> In some jurisdictions, mere verbal protests by the owner of land to its use by another are sufficient to disprove an acquiescence by him in such use. In other jurisdictions, however, a mere verbal act on the premises over which an easement is claimed, resisting its exercise and denying its existence, does not disprove acquiescence by the owner unless it is accompanied by an overt act which in fact obstructs the use of the alleged easement. Where this rule prevails, one isolated instance of an attempt to interrupt a use not resulting in actual interruption and

> not followed by an attempt to test the right to use does not, as a matter of law, necessarily disprove acquiescence.

25 AM. JUR. 2d, *Easements and Licenses* §§ 72 & 73 (1996). Moreover, "any unambiguous act of the owner of the land which evinces his intention to exclude others from the uninterrupted use of the right claimed breaks its continuity so as to prevent the acquisition of an easement therein by prescription." *Id.* at § 69.

■ Here, the appellees did not sit idly by and allow appellants to use the property. They not only protested verbally, they also pursued a series of overt acts to obstruct the use of the alleged easement. The chancellor determined that appellants' use of appellees' property had not been of such a continuous and uninterrupted nature as to vest in them a prescriptive easement. A chancellor's finding with respect to the existence of a prescriptive easement is a finding of fact and will not be reversed by this court unless it is clearly erroneous. *Stahl v. Thompson*, 6 Ark. App. 275, 641 S.W.2d 721 (1982). We find no clear error here.

Concluding as we have that the chancellor did not err in refusing to grant appellants a prescriptive easement over appellees' property, we do not find appellants' second and third points persuasive.

Affirmed.

COOPER and MEADS, JJ., agree.