2012 Ark. App. 217

**Fredric DOHLE, Bertha Dohle, James Dohle, and Kathy Dohle, Appellants**

v.

**Sue Ann DUFFIELD, Frances Augusta Duffield Johnson, and Jim Johnson, Appellees.**

**No. CA 11–967.**

Court of Appeals of Arkansas.

March 28, 2012.

Kyle T. Unser, Keith, Miller, Butler, Schneider & Pawlik, PLLC, Rogers, for appellant.

William R. Mayo, Fayetteville, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellants Bertha and Fredric Dohle and Kathy and James Dohle appeal the order of the Benton County Circuit Court establishing prescriptive easements over their property in favor of appellees Sue Ann Duffield, Frances Augusta "DeDe" Duffield Johnson, and Jim Johnson. Appellants argue that the trial court clearly erred in awarding the prescriptive easements because appellees' use of the appellants' property was neither continuous nor adverse. We affirm in part and reverse in part.

Title to all of the land at issue (an eastern and western tract) was once held by appellee Sue Ann Duffield and her husband Otto Duffield. On January 2, 1985, the Duffields conveyed the eastern tract of their property to their daughter, DeDe Duffield Johnson and her husband Jim. The Johnsons reside in a house on the eastern tract. Water for their residence is pumped from a storage tank located in a spring house (built by the Duffields) on the western tract. A pipe extends from the spring house to the Johnson residence, and the pump in the spring house is served electrical power by means of a power line extending from an electric pole also located on the western tract. The Johnsons pay for electrical service to the spring-house pump.

When the western tract of the Duffields' property fell into foreclosure, it was purchased by Bertha and Fredric Dohle in 1989. Within the Dohle tract is a two-acre cemetery plot, where members of the Duffield family have been buried. Access to the cemetery is by means of a road also located on the Dohles' property. In 1996, the Dohles conveyed title to the cemetery, as well as ingress and egress to the cemetery, to appellee Sue Duffield. Between the parties' shared boundary line and the cemetery-access easement, there is a seventy-five-foot gap (the gap) that rests entirely on the Dohles' property. Over the years, appellees have crossed the gap to enter the cemetery and to access their own property when inclement weather prevented them from using their own private, steep driveway.

On three separate occasions—September 23, 2000, April 18, 2004, and October 23, 2009—appellants barricaded appellees' access to the gap. Also, in October 2009, appellants padlocked the spring house, which resulted in a lack of water running to appellees' house. In response, on October 28, 2009, appellees filed suit for trespass,[1] for prescriptive easements in the gap and the spring house, alternatively, easements by necessity in the gap and the spring house, and injunctive relief. At trial, appellees claimed rights to the gap and the spring house, asserting that they had used them since 1985. Appellants claimed that appellees' use of the gap and spring house was with permission, but conceded that Fredric Dohle barricaded the gap on three occasions after arguments with DeDe Johnson.

After taking the matter under advisement, the trial court entered a letter opinion on April 1, 2010, dismissing appellees' claim for trespass but granting appellees easements by prescription in the gap and the spring house. In the letter opinion, the trial court found that the relationship between the parties was not one of "good neighbors." The court concluded that appellees used the gap and spring house "openly and notoriously" and found "the blocking of the [gap] by Dohle from time

---

1. Appellees alleged that appellants and members of their families were trespassing on appellees' cemetery.

to time to be real proof and acknowledgment of the adverse nature of [appellees'] use of the Dohle land." An order establishing prescriptive easements was entered by the trial court on April 9, 2010. Appellants appealed. On February 23, 2011, our court dismissed appellants' appeal for lack of a final order because it failed to define the boundary lines of the easements. *Dohle v. Duffield*, 2011 Ark. App. 135, at 3, 2011 WL 693592. On June 23, 2011, the trial court entered an order modifying the order establishing prescriptive easements. Appellants have timely appealed from this order.

We review equity cases de novo on the record and will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Carson v. Cnty. of Drew*, 354 Ark. 621, 624, 128 S.W.3d 423, 425 (2003). In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*, 128 S.W.3d at 425. Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* at 624–25, 128 S.W.3d at 425. A finding is clearly erroneous, when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* at 625, 128 S.W.3d at 425. It is this court's duty to reverse if its own review of the record is in marked disagreement with the trial court's findings. *Id.*, 128 S.W.3d at 425.

At issue in this case is the trial court's finding that appellees established prescriptive easements over the property of appellants.

A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. Like adverse possession, "prescriptive easements ... are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. This court has said that the statutory period of seven years for adverse possession applies to prescriptive easements. That statutory period for adverse possession is set out in Ark. Code Ann. § 18–61–101 (1987). *See also* Ark.Code Ann. § 18–11–106 (Supp.1999) (enacted as Act 776 of 1995).

*Carson*, 354 Ark. at 625, 128 S.W.3d at 425–26 (citations omitted). If the use is continuous and unrestricted for the statutory period of limitations, the rights become permanent and irrevocable. *Id.* at 626, 128 S.W.3d at 427.

Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Id.* at 626, 128 S.W.3d at 426. Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. *Id.*, 128 S.W.3d at 426. Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. *Id.*, 128 S.W.3d at 426. The determination of whether a use is adverse or permissive is a fact question, and former decisions are rarely controlling on this factual issue. *Id.*, 128 S.W.3d at 426. The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Id.*, 128 S.W.3d at 426.

■ The order of the trial court granting appellees a prescriptive easement in the spring house found that appellees' use of it was adverse. On appeal, appellants challenge this finding.[2] We hold that the trial court's finding that appellees' use of the spring house was adverse is not clearly erroneous because evidence of appellees' adverse use of the spring house is considerable. The undisputed facts establish that appellees used the spring house to provide water to their residence on the neighboring tract from 1985 to 2009–before and after appellants purchased the property on which the spring house sits. The evidence showed that there was a pipe that ran the water from the spring house, across appellants' property, to DeDe and Jim Johnson's home. Evidence showed that appellees maintained and repaired the spring house as well as the pump therein. Not only did appellees use the spring house to furnish water to their home, but they also arranged and paid for electrical utilities at the spring house to run the water pump since 1985.

■ This evidence—that appellees were maintaining two utilities on appellants' property—establishes that appellees' use of the spring house was adverse. Such adverse actions are charged to the landowner.

> The general rule is that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty as in the case of vendor and purchaser, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding. Or as the rule has been expressed more briefly, where a man has sufficient information to lead him to a fact, he shall be deemed cognizant of it.

*Hannah v. Daniel,* 221 Ark. 105, 108, 252 S.W.2d 548, 550 (1952) (citing *Waller v. Dansby,* 145 Ark. 306, 224 S.W. 615, 617 (1920)). This rule has been applied to prescriptive easements. *Childress v. Richardson,* 12 Ark.App. 62, 65, 670 S.W.2d 475, 476 (1984); *see also Dixie Furniture Co. v. Ark. Power & Light Co.,* 19 Ark.App. 160, 718 S.W.2d 120 (1986) (affirming summary judgment and awarding a prescriptive easement for a ninety-foot telephone utility structure and transmission lines because the purchasers were charged with notice of the structure and lines, the existence of which was apparent upon an ordinary inspection of the property).

Appellants acknowledge appellees' extensive use of the spring house. Dohle testified that he knew "from the start" that appellees were pumping water from the spring house and that they were receiving electricity there as well. However, appellants claim that appellees' use of the spring house was permissive. In dismissing appellants' claim that appellees' use of the spring house was with appellants' permission, the trial court in its letter opinion found that "[i]t is also clear that the relationship between [appellees] and [appellants] has not been one of 'good neighbors.' Instead, there have been incidents of overt and outright aggravation and interference, separated by periods of simmering, contemptuous quiet." The trial court's finding that appellees' use of the spring house was not with appellants' permission is a finding of fact. In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Carson,* 354 Ark. at 624, 128 S.W.3d at 425.

---

**2.** Appellants concede that appellees' use of the spring house was continuous and uninterrupted for the required seven-year period.

Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* at 624–25, 128 S.W.3d at 425.

Moreover, there was evidence contrary to appellants' position that appellees' use of the spring house was with permission. Dohle testified that he asked appellees for permission to tap into their electricity at the spring house so that he could use his own pump to provide water to his garden. For his use of the electricity, Dohle paid appellees a portion of their electric bills for a six-month period. Finally, DeDe testified that when Dohle asked to use appellees' electricity, he said he would not use appellees' spring-house water; instead, he said he would be pumping water out of his pond. For all these reasons, we hold the trial court did not clearly err in finding that appellees' use of the spring house was adverse and in granting appellees a prescriptive easement in the spring house. We therefore affirm on this point.

Appellants also argue that the trial court clearly erred in granting appellees a prescriptive easement in the gap. On this point, appellants contend that not only did appellees fail to establish adverse use, but they also failed to establish continuous and uninterrupted use for the seven-year statutory period. Because our holding on the latter issue is dispositive on this point, we address it first.

In *Kelley v. Westover,* 56 Ark.App. 56, 938 S.W.2d 235 (1997), our court was presented with facts similar to those in the case at bar accompanied with the issue of continuous and uninterrupted use in the context of a prescriptive easement. There, the evidence was that for twenty years the Kelleys used the Westovers' driveway as an alternate access during inclement weather because the Kelleys' driveway was very steep. During that time, however, the Westovers employed various methods to keep the Kelleys from crossing the property: the Westovers asked the Kelleys by telephone and in person to stay off the property; they ran barbed wire across the road; they replaced barbed wires cut by the Kelleys; they removed a gate installed by the Kelleys and replaced the fence wire; they piled brush, logs, and other debris across the road; they posted no trespassing signs; they called the sheriff's office; and they felled trees across the road. *Id.* at 58, 938 S.W.2d at 235–36. On this evidence, the trial court found that the Kelleys' sporadic crossing of the Westovers' property was not continuous and uninterrupted use sufficient to establish a prescriptive easement. *Id.* at 57, 938 S.W.2d at 235.

On appeal, our court stated, "any unambiguous act of the owner of the land [that] evinces his intention to exclude others from the uninterrupted use of the right claimed breaks its continuity so as to prevent the acquisition of an easement therein by prescription." *Id.* at 60, 938 S.W.2d at 236–37 (citing 25 Am.Jur.2d, *Easements and Licenses* § 69 (1996)). Accordingly, we affirmed and held that the Kelleys' use of the property had not been of such a continuous and uninterrupted nature as to vest in them a prescriptive easement. We stated, "the [Westovers] did not sit idly by and allow [the Kelleys] to use the property. They not only protested verbally, they also pursued a series of overt acts to obstruct the use of the alleged easement." *Id.* at 60, 938 S.W.2d at 237.

Like the Westovers, appellants herein did not sit idly by and allow appellees to use the property. The facts in the instant case are undisputed that appellants pursued a series of overt acts to obstruct the use of the gap. Dohle testified that he

blocked the appellees' use of the gap.[3] DeDe Johnson confirmed this, admitting that appellees' use of the gap was not continuous:

Q: Okay. Now, you testified earlier that your use of [the gap] has been interrupted in the past?

A: Yes.

Q: Okay. So you agree with me that your use of [the gap] has not been continuous? That there have been periods when you've been interrupted; right?

A: Right.

DeDe testified that Dohle interrupted appellees' use of the gap on three different occasions—in 2000, 2004, and 2009—and she offered examples of how Dohle blocked their use of the gap: he gated the open area of the fence; he padlocked his gate; he took down the gate and put up a fence; he placed a big tree stump, railroad ties, trailers, trucks, and tractors in front of the fence "so that there was no way that we could get through if we wanted;" and he posted no-trespassing signs. These blockades resulted in actual interruptions of appellees' use that continued for days until Dohle removed them. Moreover, despite appellees' sporadic use of the gap,[4] these three interruptions got appellees' attention. They were significant enough that DeDe documented them in her journal, and the barricades generated complaints from DeDe on each occasion.

We acknowledge that in *Kelley* we affirmed the trial court's finding that the Kelleys' use was not continuous and uninterrupted, and in doing so we stated that the trial court's finding on such an issue is a question of fact for the fact-finder that we will not reverse unless it is clearly erroneous. *Kelley,* 56 Ark.App. at 60, 938 S.W.2d at 237. However, in the instant case, we are reversing the trial court because it clearly erred in finding that appellees' use was continuous and uninterrupted for the statutory period. This clear error is demonstrated by DeDe's admission that appellees' use was *not* continuous and uninterrupted. The trial court's clear error is compounded by the finding in its letter opinion that Dohle "from time to time" blocked the gap. While the trial court relied on this finding to reach its conclusion that appellees' use of the gap was adverse, this same finding also establishes that appellees did not continuously and without interruption use the gap. Therefore, we hold that the trial court clearly erred in finding that appellees' use of the gap was continuous and uninterrupted for the seven-year statutory period. Accordingly, we reverse on this point.

Affirmed in part; reversed in part.

HART and ROBBINS, JJ., agree.

---

**3.** We refer back to the finding of the trial court that the parties were not "good neighbors," which we interpret to be a finding that appellees' use of the gap was not with appellants' permission. If appellees' use of the gap was not with permission, then it was adverse. If appellees' use of the gap was adverse, then appellants' blocking the gap on several different occasions using several different means can only be interpreted as an interruption of appellees' use.

**4.** DeDe testified that her driveway is impassable due to weather approximately one month of the year. There was no testimony about how many times a year appellees visit their cemetery.