W. J. STYERS, ET AL v. DALTON NORTHERN, ET AL

5-4082                                           411 S. W. 2d 296

Opinion delivered February 13, 1967

*J. B. Milham,* for appellant.

*Fred E. Briner,* for appellee.

CONLEY BYRD, Justice. Appellants, W. J. Styers, et al., brought this suit to quiet title to a strip of land lying between his house and a service station owned by appellee Eddie Davis in the city of Benton, Arkansas. Appellants have no record title and proceed upon the theory that they have acquired title by adverse possession. Mr. Davis denied Mr. Styers' title, set up title in himself by adverse possession and prayed that the title to the lands be quieted in him.

The trial court found that neither appellants nor appellee is entitled to have the title quieted in him by reason of adverse possession, that neither of them has the right to deny the other the use of the driveway, and refused to quiet appellants' title. The driveway covers only a portion of the north end of the strip of land in question.

On this appeal appellants raise four alleged issues, all of which we group together for discussion purposes.

The facts show that Mr. Styers acquired title to his home which lies immediately west of the disputed strip in 1929, and that his son acquired title to the 111-foot tract on Edison Avenue where appellee's service station is now located. The latter tract lies immediately east of the disputed strip. For the first six or eight years of his ownership, Mr. Styers had a garden on the strip and had it under fence, but later on he and his son went into the wine business and the strip was used in connection with their wine business. The service station now owned by appellee is built on the foundation of the winery, which was on the 111-foot tract acquired by the son.

The son conveyed title in 1946 to Robert Thomas and wife, who conveyed to Dalton Northern, et al. In 1951, Dalton Northern conveyed to Dr. Buffington.

It is admitted that in 1952 Dr. Buffington built the filling station on the 111-foot tract, and that at that time Dr. Buffington made an agreement with Mr. Styers concerning the concreted portion of the strip. Appellant Styers admits that, with respect to the concreted portion, he gave permission to Dr. Buffington or anyone else to use it, so long as it was kept open for his use—apparently the concreting of the strip benefited appellant Styers.

At the time the service station was constructed by Buffington, Dalton Northern was an agent for American Oil Company and the station was leased by Dr. Buffington to American Oil Company for a period of years which

has expired. Dalton Northern, subsequent to the construction of the station, re-acquired ownership from Dr. Buffington, and in September, 1963, the station was sold to appellee Davis.

The parties are in agreement that during the American Oil lease, which expired some time in the early sixties, all of the operators made an effort to comply with the agreement between Dr. Buffington and Mr. Styers by keeping cars out of the easement.

Appellee Davis testified that the concreted portion of the strip of land was shown to him as being part of the service station; that he bought the service station thinking it was part of the premises; and that one could not operate the station without the concreted portion of the strip involved. Appellant offered no testimony to show that the service station could be operated without the concreted portion of the strip, and the overwhelming evidence points this up to have been a known fact when the agreement was made with Dr. Buffington.

Appellant Styers' fencing of the tract in question and his use of it for a garden was substantiated by Jody Gentry, who had known the place ever since Mr. Styers went into possession in 1929.

Under the circumstances, it is seen that appellant Styers was aware that Dr. Buffington constructed the service station on the old winery foundation in reliance upon the agreement with respect to the use of the concreted portion of the strip of land involved in this litigation. Furthermore, appellant Styers' testimony indicates that the concreting of that portion of the strip for driveway purposes was a benefit to him at the time.

The record shows without contradiction that, from 1952 until appellee Davis acquired the premises in 1963, appellees' predecessors in title accepted the benefit of Dr. Buffington's agreement which recognized appellants' right to the land.

Appellants, having permitted Dr. Buffington to make substantial improvements upon his own property in reliance upon their oral agreement with reference to the driveway, together with Dr. Buffington's performance of the condition of the oral agreement by improving his driveway so that it cauld be used for the benefit of both appellant Styers and himself, are estopped to contest appellee Davis' right to use the driveway in accordance with the agreement between appellant Styers and Dr. Buffington. *Wynn* v. *Garland,* 19 Ark. 23 (1857). It also follows that, since appellee Davis' predecessors in title accepted the benefits of the oral agreement between appellant Styers and Dr. Buffington by which they were permitted to enter on the lands, appellee is also estopped to question appellant Styers' title to the property. See *Illinois Standard Mortgage Corp.* v. *Collins,* 187 Ark. 902, 63 S. W. 2d 342 (1933) and *Mantooth* v. *Burke,* 35 Ark. 541 (1880).

Therefore, we hold that upon the record in this case the trial court should have quieted appellants' title to the property involved as against appellee Davis, subject, however, to the agreement made between appellant Styers and Dr. Buffington with respect to the concreted portion of the strip. Since this is in effect the result reached by the trial court when it said that neither of the parties has the right to deny the other the use of the driveway, we are modifying this on appeal to the extent indicated but directing that each party bear his own cost.

Affirmed as modified, and remanded for entry of a decree in conformance with this opinion.