BEN B. HUBBARD AND IRMA W. HUBBARD, HIS WIFE
v. MRS. ROSCOE McKEE

5-5629                              471 S.W. 2d 550

Opinion delivered October 18, 1971

*Wiggins & Christian,* for appellants.

*J. Clib Barton* and *Franklin Wilder,* for appellee.

J. FRED JONES, Justice. Mrs. Irma W. Hubbard and Mrs. Roscoe McKee own their homes on adjacent lots fronting on Kinkead Avenue in the City of Fort Smith. A concrete driveway extends from Kinkead Avenue to garages on the rear of the two lots. The driveway is approximately ten feet wide with approximately six feet of it on the Hubbard lot and four feet of it on the McKee lot. The Hubbards attempted to build a fence along their property line through the length of the driveway and they bring this appeal from a decree of the Sebastian County Chancery Court holding that Mrs. Mc-Kee has a private easement for ingress and egress to the rear of her property over the concrete driveway and enjoining each party from interfering with the other in the free use of the driveway. The Hubbards rely on the following point for reversal:

"The trial court erred in finding that the appellant had objected to the use of the driveway for more than seven (7) years last past and in awarding a private easement for ingress and egress to the appellee."

The facts as gathered from the evidence of record are to the effect that both pieces of property were originally owned by a single individual and adjoining garages were constructed under one roof on the rear of the lots. These garages are unaccessible from the alley behind the lots. The McKee property was purchased and occupied by Roscoe McKee and the appellee, Mrs. Roscoe McKee, about 1935. Mr. McKee died in 1964 and Mrs. McKee, now 89 years of age, has continued to live on the property. She continued to drive her own automobile and use the driveway until about four years before the trial of this case, and her friends and relatives have continued to use the driveway in reaching the rear of her home since she quit driving her own automobile.

Mr. and Mrs. Harry Whitenak originally owned the Hubbard property having purchased it about 1938. Appellant Irma W. Hubbard is the daughter of Mr. and Mrs. Whitenak who are now deceased. She now owns the property originally owned by her father and mother. She lived at home with her father and mother after they purchased the property and has continued to live in the home since the death of her parents. She and Mr. Hubbard were married in 1943; they lived a short time in Knoxville but have lived on the property involved since 1945. The driveway between the two lots was constructed in 1938 and there is no question that it was used constantly from 1938 until the incidents leading to this litigation.

It appears from the evidence that Mr. and Mrs. Hubbard became dissatisfied with the extent and manner Mrs. McKee's relatives, friends and neighbors used the driveway in visiting Mrs. McKee after her husband's death, and that this dissatisfaction finally resulted in Mr. Hubbard attempting to close the driveway to Mrs. McKee by erecting a fence through the length of the driveway three inches inside his true property line.

The chancellor found that the driveway had been used by Mrs. McKee and others in an adverse, hostile and continuous manner for more than 20 years and he entered an order enjoining and restraining each of the parties from interfering, obstructing or blocking the driveway or doing anything to prevent the normal and peaceful use of the driveway by either of the parties or their friends, relatives, people making deliveries and other visitors. The chancellor further found that there had been objections by Mr. and Mrs. Hubbard to the use of the driveway by Mrs. McKee, her relatives, friends and visitors for more than seven years and, therefore, the adverse use under claim of right was brought home to the Hubbards for more than seven years prior to the effort on the part of Hubbard to erect the fence in the driveway.

The evidence is not perfectly clear as to the exact date the Hubbards first objected to Mrs. McKee's use of the driveway. Mrs. McKee and her witnesses testified that friction between the families resulted from bankruptcy proceedings 15 years ago and that Mr. Hubbard had objected in various ways to the use of the driveway since that time. The Hubbards and their witnesses testified that all the objections indicated by the Hubbards were within the past three years.

There is no question that the driveway was being used for ingress and egress to Mrs. McKee's house. Mr. Hubbard testified that all the difficulty over the driveway arose during the past three years; that he kept an accurate account of the automobiles using the driveway to Mrs. McKee's house over a period of time, and that there were 243 vehicles going to her house over the driveway from September 29, 1969, to June 16, 1970.

A plat of the premises offered in evidence shows that the driveway forks near the rear of the two lots and that portion leading to the front of the McKee garage is entirely on the McKee lot as it enters the garage. Mrs. Hubbard was living at home with her parents when the driveway was constructed and her own testimony relating to its construction is significant. She testified that Mr. McKee came over and discussed the driveway with her father; that her father built the driveway with his own labor and that he and Mr. McKee shared equally in the cost of the materials. In answer to questions propounded by the chancellor, Mrs. Hubbard testified as follows:

"THE COURT: Your Dad built the driveway?

A. He built the driveway, and he did the labor, and he and Mr. McKee split the cost of the concrete.

THE COURT: They mutually agreed then to put the driveway in and split the cost?

A. Yes."

Mrs. Hubbard testified that she begged her father not to share the driveway with the McKees because of trouble they had previously had, but that her father and Mr. McKee went ahead and built the driveway over her objections as she put it:

> "Me begging them not to do it, not to share it, because we had had trouble before. And I asked Dad not to do it. And they said, oh, it is two old people, they can't bother anybody."

Mrs. Hubbard testified that Mr. McKee has been dead about nine years and that about 18 months before his death his daughter, Mrs. Pitts, who lived nearby, converted her own garage into a temporary apartment and started parking her automobile in the McKee yard. She testified that Mrs. Pitts used the driveway in gaining access to the McKee yard and that she, Mrs. Hubbard, objected to the use of the driveway by Mrs. Pitts. In this connection Mrs. Hubbard testified as follows:

"A.  . . . I asked Mr. McKee, I said, Mr. McKee, how long is this going on, *you know this driveway has just been built for the two houses.* And he said, oh, they are going to build a carport. Well, he was not well. I didn't push the issue, which was my mistake.

Q.  That was Mr. Roscoe McKee?

A.  Yes.

Q.  About when they were going to quit using the driveway? And he died nine years ago. How many years before was that?

A.  About a year or eighteen months before he died.

Q.  And you asked him then how long he was going to use that driveway?

A.  I asked him how long they were going to use

the driveway. He died in 1961, and I would say this was along in 1959.

Q. And you let him know then you didn't like him using that driveway?

A. Yes, sir." (Emphasis added).

In the recent case of *Armstrong* v. *McCrary*, 249 Ark. 816, 462 S. W. 2d 445, the facts were almost identical to the facts in the case at bar. In *Armstrong* the two adjoining property owners built their garages under one roof on the back of their lots with their respective garages on each side of the division line. In *Armstrong* most of the driveway was on Armstrong's property and he could drive his car directly over the driveway into his garage, whereas McCrary, when using the driveway to reach his garage, was required to deviate to his right and onto his own lot in order to enter his garage. Most of the evidence in *Armstrong* was directed to the continuous use of the driveway by both parties over a long period of years, and there was considerable evidence both *pro* and *con* as to the extent of actual use. The appellant Armstrong contended that he had maintained the driveway over to the appellee's fence since he purchased the property in 1956, and that McCrary had only used the driveway on rare occasions and then by specific permission granted by Armstrong. McCrary contended that he had used the driveway regularly and as a matter of right over the years. In sustaining the chancellor's findings that the continuous use had ripened into a right by prescription we said:

"We are unable to say that the findings of the chancellor are against the preponderance of the evidence. Whether appellee used the driveway and under a claim of right was highly disputed. . . The chancellor elected to give greater credibility to the evidence proffered by appellee and he was in much better position than we are to make the choice. Additionally, the construction of the double garage in 1932 by Snodgrass and Bracy is highly pursuasive. Each had contributed part of the land that went into

the project and they endeavored to place the garage astride the common boundary. Entrance to Mr. Bracy's [McCrary's] side of the garage from the street could be gained only by traversing the established driveway. The hedge and wrought iron fence on the Bracy property, instead of being straight, curved at the north end so as to permit Mr. Bracy to deviate to the right at the north end of the driveway and enter the garage."

The dissenting opinion in *Armstrong* points out that use which is *permissive in its inception* can never ripen into an adverse or hostile right no matter how long continued unless an *adverse right has been brought home to the owner,* and the two dissenting Justices simply disagreed with the majority as to the sufficiency of the evidence to establish the claim of right adverse to the owner.

In the case at bar there is no question as to the constant use of the driveway for more than 20 years by both the Hubbards and the McKees. As a matter of fact it was the use of the driveway by Mrs. McKee's relatives and visitors, which was considered excessive by the Hubbards, that brought about the lawsuit in this case. According to Mrs. Hubbard's own testimony her father and Mr. McKee each contributed a portion of their lot for the construction of the driveway; they both contributed to the cost of the materials that went into the construction of the driveway, and they did so over her personal objections.

Furthermore, by the construction of the common driveway to the adjoining garages under one roof, through their joint efforts, Mr. and Mrs. McKee obtained a license to use the driveway, and the Whitenaks, and the persons holding under them, having accepted the benefits of the improvement, are estopped to contest Mrs. McKee's use. See *Styers* v. *Northern,* 241 Ark. 1023, 411 S. W. 2d 296 (1967), and *Wynn* v. *Garland,* 19 Ark. 23 (1857).

We are of the opinion, therefore, that the chancel-

lor's decree is not against the preponderance of the evidence in this case and should be affirmed.

Affirmed.