C. W. WISDOM ET UX *v.* CARROL THOMAS ET AL

5-5995                                    484 S.W. 2d 348

Opinion delivered September 11, 1972

*Mooney & Boone,* for appellants.

*Frierson, Walker, Snellgrove & Laser,* for appellees.

LYLE BROWN, Justice. This is an action brought by appellants to quiet title as against the claim of appellees to a right of way for a road to appellees' property. The road traverses a portion of appellants' land. The chancellor held that appellees had acquired fifteen feet by agreement and nine feet by prescription. Appellants challenge the sufficiency of the evidence to sustain both findings.

Floyd Dority was the owner of an unplatted forty-acre tract of land near the city of Jonesboro. Eventually he sold

all of the west twenty acres to various persons for home-sites. In 1961 Dority sold to Wisdom and wife, appellants, a building site near the center of the twenty acres. Appellees, Carrol, Jesse and Johnny Thomas, became the owners of homesites north of appellants' property and in the same twenty acres. The appellees were desirous of a roadway running north and south across the east side of the twenty acres. At that time Dority still owned all the east twenty acres of the forty-acre tract and according to appellees he granted "up to fifteen feet" for a road which would split the forty acres. Subsequently thereto, Mr. Dority sold to the Wisdoms approximately three acres out of the east twenty acres and adjoining the Wisdoms. That acreage, of course, was on the east side of the proposed road. In the latter deed there was excepted a "public road right of way off the west side thereof."

Carrol Thomas built the first house to face the disputed road. He testified that appellant Wisdom agreed, without qualification, to contribute fifteen feet to the roadway. Subsequently, in 1962 or 1963, gravel was spread on the road. This was done with the assent of appellant Wisdom. Most of the neighbors joined in to help with the road and the county judge also contributed gravel. A fence post on the west side of the road and at the northeast corner of appellants' original grant was set back nine feet off the actual property line. That was done by Johnny Thomas but appellant Wisdom made no protest. The roadway was used by all the neighbors, including appellants, without incident for more than eight years.

The findings of the chancellor with respect to the fifteen feet granted by Mr. Dority are clearly not against the preponderance of the evidence. Appellant Wisdom candidly conceded that he shared the cost of the gravel on the east side of the road. With respect to the nine-foot easement by prescription found by the chancellor, the moving of the line fence post, the spreading of gravel on part of the easement, and the construction of the utility lines under the nine-foot strip, tilt the scales of preponderance in favor of the chancellor's findings. At least we cannot say his findings were against the preponderance of the evidence. Even if the conflicting evidence were evenly poised, we would defer to the judgment of the chancellor,

who is in better position to determine credibility. *Alley v. Martin*, 250 Ark. 74, 464 S.W. 2d 591 (1971).

Appellants insist that the granting of fifteen feet by Dority was conditioned that the landowners on the opposite side give a like amount, which was not done. Mr. Dority's testimony does not exactly sustain that contention. When asked if there were such an agreement he replied: "I wouldn't say that there were or were not [such an agreement]. I don't remember that well. We just discussed the road and I said I am willing to give 15 feet if everybody agrees and thinks that's all right and I assumed that everybody was happy because the road was built." Additionally, Mr. Dority permitted the road to be built without fifteen feet being utilized on the other side from his property. And it has been used by the public generally since it was established, all without objection from Dority. With respect to any agreement by appellant Wisdom there was testimony that he agreed to give up to fifteen feet and that "he did not put any qualifications on it."

With respect to a nine-foot easement granted by prescription, appellants insist that when the proper law is applied the chancellor was in error. They cite *Williams v. Fears*, 248 Ark. 486, 452 S.W. 2d 642 (1970) for the proposition that permissive use does not ripen into a prescriptive right until positive notice of adverse claim is conveyed to the owner. That case is also authority for the proposition that permissive use can ripen into a prescription by positive notice to the owner and holding thereafter continues for the statutory period. Also, see *Styers v. Northern*, 241 Ark. 1023, 411 S.W. 2d 296 (1967). A license to use another's land is not revocable where the grantee has been induced to spend time and labor towards its enjoyment, without reimbursement; the use thereof can ripen into prescription. *Wynn v. Garland*, 19 Ark. 23 (1857). The appellants stood by for the statutory period and permitted appellees to spread gravel on most of the nine-foot strip, construct utility lines thereunder, and move back a fence post; appellants witnessed the improvement for passageway purposes by the neighbors, by county and city equipment, and the use of the way by the landowners and the public in general. In fact the appellants used the road themselves. Under those circumstances we

cannot say the finding of the chancellor that prescriptive rights were vested in appellees is against the preponderance of the evidence.

Affirmed.