Helen Strohl HALL *v.* Charles CLAYTON
and James ROUNSAVALL

CA 80-189                                    606 S.W. 2d 102

Court of Appeals of Arkansas
Opinion delivered October 8, 1980

*House, Holmes & Jewell*, for appellant.

*Thweatt & Bayne, P.A.*, for appellees.

STEELE HAYS, Judge. This appeal involves a road which divides two adjacent parcels of real property, one owned by appellee Charles Clayton and the other owned by appellee James Rounsavall. This road had been used for many years by appellant, Helen Strohl Hall, for access to her property. Also, there was evidence in the record to support the contention that the road was used by other farmers, fishermen and hunters.

In the fall of 1978, appellees placed a steel cable across the road. Appellant brought this action seeking a restraining order and injunctive relief. Appellees acknowledge that Helen Strohl Hall and others have a right to use the road, but deny that the public has acquired a prescriptive easement to use the road.

At trial, appellant presented five witnesses to show that the public had had free access to the road for more than 25 years. One witness, apparently knowledgeable, testified that the road had been there as early as 1905. Appellees presented testimony of seven witnesses to show limited use of the road by farmers and also to show that unwanted third parties had used the road to vandalize appellees' farm equipment. The Chancellor found that appellant failed in her burden of proof to show that the road was a public road, but that plaintiff and others had acquired an easement by prescription to use the roadway.

Appellant now brings this appeal, asserting as her only point for reversal that the trial court erred in finding that the public did not have a prescriptive easement.

Where a highway is used by the public *openly, continuously* and *adversely* for a period of seven years, the public acquires an easement by prescription.

Appellant cites *Weigel* v. *Cooper*, 245 Ark. 912, 436 S.W. 2d 85 (1969), as the leading case on easement by prescription. In *Weigel*, plaintiffs instituted an action against defendants to prevent the latter from maintaining a barrier across a disputed road. They contended that the road had been used by the general public for a period of 30 years and presented testimony of different witnesses, generally landowners in the area, to the effect that they had used the road. One person testified that all families living south of the county road had to use the road (commonly known as the Tobe Road) to "get out from the bottoms, because the 'Wire Road' was too low and frequently flooded." The defendant argued that the land was unenclosed and unimproved, and this being true, the presumption was that the use of the roadway was permissive. The Chancellor found that continued use of the roadway was permissive. The Chancellor found that continued use of the roadway established plaintiff's right to use the roadway and created an easement by prescription. The Arkansas Supreme Court affirmed the ruling of the Chancellor, stating that appellees plainly made out a *"prima facie* case of acquiring an easement by prescription." The Court looked to the evidence which established that the road was well known and had

been used by many different persons for over 30 years. The Court stated:

> Certainly, this usage was open, and the length of time with which it was used without objection is potent evidence to show that the use was as a matter of right, and not as matter of permission. Here, too, there is evidence that many of the people who lived in the area and used the road would perform some type of work to improve the roadway.

The opinion recognized the fact that even if use of the road had begun by permission, it would not make any difference under the rule of *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S.W. 2d 281 (1954):

> Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the land-owner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then usage ripens into an absolute right.

The court in *Fullenwider* went on to say:

> All that has been done. . .and the upkeep of the road would serve to notify any interested person that the common property owners were recognizing a right to a common road.

Appellant also cites *Pfeifer* v. *Dunn*, 257 Ark. 863, 520 S.W. 2d 178 (1975) and attempts to distinguish it. In *Pfeifer*, there was essentially the same factual situation as was present in this case. However, In *Pfeifer*, the owner of the servient estate and other landowners using the roadway all agreed to put a locked gate across the roadway. Eugene Pfeifer, the successor in title to the servient estate, changed the lock on the gate. The court granted a permanent injunction and ordered appellant to furnish keys to appellees, stating that

the latter had acquired a private easement. The Supreme Court affirmed, stating:

> There are several factors which, when combined, lead us to the conclusion that the court acted properly in sustaining the private easement. First, although it might be said there was an element of permissiveness in Miss Moreland's allowing the construction of the gate near the entrace to her land, it was a common gate for a common purpose, namely, to protect against vandalism.

> In the case of *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S.W. 2d 281 (1954), there was no consideration for the use of the passageway. Consequently, the use of the passageway originated strictly as a permissive right. We point up that distinction in *Fullenwider* because we think it is important to our holding. As just jointed out, it was for the common good of all the landowners to have a common gate to protect against vandalism. Also, it can be said that the new road served as a substitute for a county road which had been washed into the river. The fact that the road had been kept in good condition and the maintenance performed by county employees should have placed any doubtful property owner upon inquiry. All that has been done, including the erection of the gate, the distribution of keys, and the upkeep of the road, would serve to notify any interested person that the common property owners were recognizing a right to a common road, being a private easement.

Appellee argues that appellant failed to prove by a preponderance of the evidence that a public easement had been established by continuous use; only occasional use had been shown except to those who were granted a private easement. Appellees cite as their authority *Craig* v. *O'Bryan*, 227 Ark. 681, 301 S.W. 2d 18 (1957). In *Craig*, the Chancellor had held that appellees had met their burden of showing an easement by prescription for the general public. However, the Supreme Court reversed, stating that no easement by prescription had been proven, notwithstanding testimony that the county had done some work on the road and that fishermen had used the road from time to time. All use of the

road by others was deemed to be permissive and, therefore, did not ripen into a prescriptive easement. Even so, as abutting landowners, the appellees were allowed to use and maintain the roadway as they had in the past and appellant was estopped to deny them use of the roadway.

In the instant case, we find that the question of whether the easement in question was a private or a public one is a factual issue. Although an appellate court reviews chancery cases *de novo*, the Chancellor's decision will not be reversed unless it is clearly against the preponderance of the evidence. Rule 52, *Rules of Civil Procedure.*

The testimony in this case was disputed: appellant presented five witnesses to show that a public easement had been created and appellee offered testimony of seven witnesses to show limited use of the roadway. Where testimony is in conflict or is evenly balanced, the appellate court will be guided by the Chancellor's findings if he has not erroneously applied the law. *Titan Oil and Gas, Inc.* v. *Shipley*, 257 Ark. 278, 517 S.W. 2d 210 (1975).

In this case, we find that the Chancellor's decision was based on a correct application of the law and was not clearly against a preponderance of the evidence. We do admit to some concern as to how a road existing as long as this one and used regularly by some and sporadically by others, could be held to be a private easement rather than a public easement. However, the testimony as to continuous use, especially in terms of frequency, is susceptible of differing conclusions, and we are willing to abide by the Chancellor's estimation of the evidence.

In his decree, the Chancellor allowed appellees to maintain the gate placed at the entrance of the easement, requiring that keys be furnished to the landowners and their suppliers who have acquired use of the easement. We find that under the general rule of law concerning obstructions across an easement, this places an undue burden on the use and enjoyment of the easement, accordingly, should be removed. The general rule pertaining to gates across

easements acquired by prescription is stated in 28 C.J.S. *Easements* § 98:

> In the case of ways of prescription some of the authorities hold that since the extent of the right is commensurate with, and determined by, the use, the owner of the servient estate cannot erect a gate across a private way acquired by prescription, where no gates were constructed during the time necessary to acquire the right of way. . .
>
> On the other hand, many decisions hold that the nature of the easement gained and not the particular use which created the right should control, and that a gate may be constructed across the way if it is not an unreasonable obstruction to the purposes for which the way has been used.

[Also, in support of this rule, see 52 A.L.R. 3d 9 )1973), particularly § 31, page 70 of the annotation.]

The cases on this particular issue are numerous. Most jurisdictions are in accord with the rule as stated in *Corpus Juris Secundum*. In *Hardin* v. *Pinello*, 518 P. 2d 846 (Colo. App. 1973), it was held that absent any evidence that interference caused by a locked gate would be reasonable across an easement acquired by way of necessity, defendant landowner would not be entitled to maintain such an obstruction, even though the landowners who acquired the benefit of the easement were furnished a key. In *Falco* v. *Minzar*, 213 N.Y.S. 2d 625 (1961), it was held that a locked gate across an appurtenant easement was an unreasonable interference with use and enjoyment of the easement, even though a key would be furnished for those persons for whose benefit the easement was created. [See also, *Felton* v. *Boxer*, 414 N.Y.S. 2d 219 (1979); *Messer* v. *Leveson*, 259 N.Y.S. 2d 662 (1965); *Missionary Society of the Salesian Congregation* v. *Evrotas*, 242 N.Y.S. 122 (1930).] Finally, in *Carpenter-Union Hills Cemetery Association* v. *Camp Zoe, Inc.*, 547 S.W. 2d 196 (Mo. App. 1977), the court held that the servient owner may not erect gates or bars across a road where the owner of the dominant estate had used the road during the period required for ac-

quiring an easement by prescription without gates or bars. See also *McDougal* v. *Castelli*, 501 S.W. 2d 855 (Mo. App. 1973).

Nevertheless, we also recognize the rule of law that the owner of the servient estate "owns the soil and if necessary for his own protection . . . and use and enjoyment of his property may erect at his own expense gates or bars across the way,. . . provided they are so located and maintained as not unreasonably to interfere with the plaintiff's privilege or passage." *Stucchi* v. *Colonna*, 400 N.E. 2d 1272 (Mass. App. 1980); *Merry* v. *Priest*, 276 Mass. 592, 177 N.E. 673 (1931). Maintenance of a gate across a right-of-way, if it permits use of the way, does not result in an obstruction. *Nichols* v. *Healy*, 194 N.W. 2d 727 (Mich. App. 1972). Cases previously cited from other jurisdictions objected to a *locked* gate as an unreasonable obstruction across an easement. The owner of the servient estate may erect a gate across an easement if it is located, maintained and constructed so as not unreasonably to interfere with the right of passage. *Jordan* v. *Guinn and Etheridge*, 253 Ark. 315, 485 S.W. 2d 715 (1972); *Massee* v. *Schiller*, 243 Ark. 572, 420 S.W. 2d 839 (1967). Accordingly, we hold that maintenance of the gate without the lock would not result in an unreasonable interference with use and enjoyment of the easement. The gate itself, particularly if posted as private, would serve to notify the general public that the roadway was not for public use without imposing an undue burden on use of the easement by the interested landowners.

Hence, the Chancellor's decree is affirmed as modified to the extent that the lock be removed from the gate.