V. The Preliminary-Injunction Order
A. The Implied-Dedication Claim
In evaluating the preliminary-injunction order, we begin by disposing of a brief argument made by Anita G. Anita G contends that our court should decline to consider whether Centennial Bank has shown a likelihood of success on the merits of its implied-dedication claim. Anita G raises this argument because it was a basis on which Centennial Bank sought relief in its initial complaint.
On this point, we agree with Anita G. The preliminary-injunction order was based solely on Centennial Bank's prescriptive-easement claim, and Centennial Bank concedes this. Accordingly, we will not delve into the merits of whether there has been an implied dedication of Dayton Avenue by the City of Jonesboro.
B. The Prescriptive-Easement Claim
Anita G challenges the preliminary-injunction order on several grounds related to whether Centennial Bank demonstrated irreparable harm and a likelihood of success on the merits on its prescriptive-easement claim.
1. Irreparable harm
Anita G claims the circuit court erred by finding that irreparable harm will result in the absence of an injunction. As a general premise, harm is considered irreparable if monetary damages cannot adequately compensate a party or if a wrong cannot be adequately redressed in a court of law. City of Jacksonville v. Smith , 2018 Ark. 87, 540 S.W.3d 661.
Generally, Anita G's argument is that the evidence demonstrated that mere inconvenience resulted from the closure of Dayton Avenue and that mere inconvenience is insufficient to support a finding of irreparable harm. We acknowledge that the testimony indicates that Dayton Avenue was the easiest, most convenient travel route for many witnesses but that it was not the only means by which to reach one's destination. Nevertheless, that is not the irreparable harm the circuit court identifies in its order.
In the injunction order, the circuit court specifically found that in the absence of an injunction there would be irreparable harm because Anita G
would be able to engage in uses of the disputed property which would realistically diminish or destroy the public's use of the roadway even if [Centennial Bank] ultimately prevailed in the suit. Such diminution or elimination of access could not be rectified by simply awarding monetary damages.
There is ample evidence to support the circuit court's findings. In fact, Prateek Gera testified that Anita G planned to build a 40,000-square-foot shopping center on the property and that, had the lawsuit not been filed, it would have started construction. If construction had begun, it would be difficult-if not impossible-to afford relief to Centennial Bank because monetary damages would not suffice under these facts. Thus, we hold that the circuit court did not abuse its discretion in concluding that Centennial Bank demonstrated *569 that irreparable harm will result in the absence of an injunction.
2. Likelihood of success on the merits
Anita G's remaining arguments to reverse the preliminary-injunction order pertain to whether Centennial Bank demonstrated a likelihood of success on the merits of its complaint. The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. Smith , 2018 Ark. 87, 540 S.W.3d 661.
Because our analysis focuses on whether Centennial Bank is likely to succeed on the merits of this action, we begin by identifying the elements of a successful prescriptive-easement claim. A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. Roberts v. Jackson, 2011 Ark. App. 335, 384 S.W.3d 28. One asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. Id. The statutory period of seven years for adverse possession applies to prescriptive easements. Id.
In seeking reversal based on a failure to demonstrate a likelihood of success on the merits, Anita G raises the issues of whether (1) there was open, notorious, and adverse use of Dayton Avenue; (2) Centennial Bank rebutted the presumption of permissive use associated with open, undeveloped land; (3) Centennial Bank proved continuous use for the requisite seven years; (4) the adverse consequences of the preliminary injunction overwhelm any benefit to it; and (5) laches bars the prescriptive-easement claim.
a. Open, notorious, and adverse use
The crux of Anita G's argument here is that any use of Dayton Avenue was permissive and therefore insufficient to demonstrate a likelihood of success on the merits of a prescriptive-easement claim. Here, we address two related points on appeal raised by Anita G, namely whether the circuit court erred by finding that there was open, notorious, and adverse use and whether Centennial Bank rebutted the presumption of permissive use that accompanies open, undeveloped land.
Whether use is adverse or permissive is a factual question. Roberts, supra. We acknowledge that use of unenclosed, undeveloped land by strangers is presumed permissive, but that presumption can be rebutted if hostility of conduct in the usage of the land is shown. See Merritt Mercantile Co. v. Nelms , 168 Ark. 46, 269 S.W. 563 (1925).
On these points, the circuit court's findings are particularly pertinent to our review. In the preliminary-injunction order, the circuit court specifically found that "members of the public never sought nor received explicit permission to use the Disputed Dayton Avenue." In determining that Centennial Bank had demonstrated adverse, rather than permissive, use the circuit court relied heavily on Gazaway v. Pugh , 69 Ark. App. 297, 12 S.W.3d 662 (2000).
In Gazaway , a group of hunters sued a landowner seeking to have a road across the landowner's property declared to be a prescriptive easement and to enjoin the landowner from interfering with their use of the road, which was on unenclosed, undeveloped land. The Gazaway appeal turned on the question of whether the hunters' use was permissive or hostile. In that case, many of the witnesses were personally acquainted with the landowner and had been given permission, at least implicitly, to use the road. Nevertheless, the circuit court was particularly persuaded that use was not permissive because an *570 Arkansas Game and Fish Commission enforcement officer testified that it was used year-round by sportsmen and that during duck season, the period of heaviest travel, seventy-five to one hundred vehicles used it on opening weekend. Our court affirmed, holding that the sheer number of travelers suggests that not all of the use was by family and friends. In essence, our court upheld a finding of acquiescence to longtime use, which overcame the presumption of permissive use.
With respect to the evidence in our case, Anita G portrays the testimony of many witnesses as being that they used Dayton Avenue with permission. That is a mischaracterization of the evidence. Instead, numerous witnesses testified that they never sought or received permission to drive on Dayton Avenue. Moreover, Michael Cureton, a CCFA board member, testified that the CCFA did not give anyone permission to use Dayton Avenue, and Eddie Burris, another CCFA board member, testified that the CCFA knew the public was using Dayton Avenue and did not stop the use. It is also important to note the testimony of city engineer Craig Light who testified that a study indicated that 1869 cars traveled Dayton Avenue daily.
The testimony elicited at the preliminary-injunction hearing demonstrates long-term use of Dayton Avenue by many drivers who did not seek or receive permission to do so and that the CCFA acquiesced to that use. Notably, the evidence indicated that many more cars traveled Dayton Avenue than traveled the road in Gazaway . We hold that the circuit court did not clearly err in finding that Centennial Bank rebutted the presumption of permissive use of Dayton Avenue and demonstrated that the use of Dayton Avenue was open, notorious, and adverse.
b. Continuous use
Anita G also argues that the use of Dayton Avenue was not continuous; therefore, it was error to find that Centennial Bank was likely to succeed on the merits of its prescriptive-easement claim.
The evidence on this point is as follows. The CCFA owned the property for many years before Anita G acquired it in March 2016. During the CCFA's ownership, members of the public frequently traveled on Dayton Avenue. However, it is undisputed that the CCFA held an annual fair lasting six days each year. During the annual fair, Dayton Avenue would be closed for portions of the day. The CCFA would reopen Dayton Avenue after the fair's end. Eddie Burris testified that the temporary closure was not a procedure intended to defeat the public's use of Dayton Avenue. Instead, the closure was merely for safety reasons related to the annual fair.
We recognize that the facts with respect to the continuity of use of Dayton Avenue are essentially undisputed. The relevant question here is whether the brief closure interrupted the continuous-use requirement necessary to prove a prescriptive easement.
Centennial Bank emphasizes that the Restatement (Third) of Property addresses effective interruption, providing in pertinent part:
A physical interference with the use is effective only if it brings about a cessation of use. If the adverse user resumes the use, the interruption has not been successful unless the cessation of use was long enough to indicate abandonment.... An unsuccessful attempt to block the use reinforces the argument that the use is adverse and does not work an interruption.
Restatement (Third) of Prop.: Servitudes § 2.17 cmt. J (2000). Based on this, Centennial *571 Bank argues that the annual brief closure did not interfere with the continuity of its use.
We acknowledge that caselaw establishes that a series of overt acts to obstruct property is sufficient to overcome a prescriptive easement. See Kelley v. Westover , 56 Ark. App. 56, 938 S.W.2d 235 (1997). In Kelley , the owners of the land took numerous drastic measures with the purpose of attempting to terminate others' use of their land. In this case, the evidence shows that the CCFA had no intention to defeat the public's use of Dayton Avenue. It merely closed the road for a few hours a day for six days a year as a safety precaution.
We compare the facts in this case to those in which there has been a temporary abandonment by the adverse user. In those cases, mere temporary absences of a claimant from the land adversely possessed by the claimant or periods of vacancy of such land that evince no intention of abandonment do not interrupt the continuity of the adverse possession, provided the absence or vacancy does not extend over an unreasonable period. See Phillips v. Carter , 263 Ark. 921, 568 S.W.2d 24 (1978). Here, we are concerned with the owner's use of Dayton Avenue not the adverse users' use. But we note that the evidence reflects no intent on the part of the CCFA to permanently defeat the public's use of Dayton Avenue.
Based on our caselaw and the Restatement (Third) of Property, we hold that the circuit court did not clearly err by finding that there had been continuous use of Dayton Avenue.
c. Adverse consequences of the preliminary injunction
Anita G also contends that the adverse consequences of the preliminary injunction outweigh any benefit and argues that the injunction should have been denied on this basis.
We acknowledge that a prescriptive-easement claim is an equitable claim. See Bobo v. Jones , 364 Ark. 564, 222 S.W.3d 197 (2006). Nevertheless, there is no specific requirement that a court weigh the equities in prescriptive-easement claims. Notably, the caselaw cited by Anita G for the proposition that the weighing of the equities was a necessary consideration is inapposite as Anita G cites no prescriptive-easement caselaw. Instead it cites cases involving private roads, easements by necessity, easements by implication, and cases involving the removal of preexisting structures, all of which require a court to weigh the equities and find that the road, easement, or removal of the structure was necessary.
Irrespective of this, we note that the circuit court clearly weighed the equities in reaching its decision. The circuit court considered the harm an injunction might cause Anita G, including its obligations to maintain Dayton Avenue. The court also reflected on the number of vehicles using Dayton Avenue and opined that money damages could not provide redress in the event an injunction was not granted. Accordingly, we find no reversible error on this point.
d. Laches
Anita G also argues that laches bars Centennial Bank's prescriptive-easement claim. Laches is a defense to an untimely equitable claim that is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party seeking relief. Royal Oaks Vista, L.L.C. v. Maddox , 372 Ark. 119, 271 S.W.3d 479 (2008).
*572 Although Anita G raised laches as a defense in its answer, the circuit court did not specifically rule on whether it applied. It is an appellant's burden to obtain a ruling on an issue, and our court will not consider the issue on appeal when an appellant fails to obtain a specific ruling from the circuit court. Eversole v. Eversole , 2015 Ark. App. 645, 476 S.W.3d 199. For this reason, we decline to further address this issue.
e. Violation of property rights
Anita G makes a final, brief argument for reversal in its reply brief. There, it argues that the decision in this case violates property rights. Specifically, Anita G seems to argue that the circuit court's preliminary injunction discourages development and improvement of land by property owners. We also decline to address this argument. It is well settled that an argument cannot be raised for the first time in a reply brief. Garrison v. Aquino , 2017 Ark. App. 338, 523 S.W.3d 905.
Affirmed.
Abramson and Virden, JJ., agree.