Cite as 2022 Ark. App. 88

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-19-969

| | |
|---|---|
| POP-A-DUCK, INC.; BERRY ABNEY; BUCK MATTHEWS; LARRY VASSAR; BILLY KYLE; AND ROBERT HARDIN | Opinion Delivered February 23, 2022 |
| APPELLANTS | APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT [NO. 34CV-18-44] |
| V. | |
| JOHN E. GARDNER; ROBBIE GARDNER; MANNING FAMILY, LLC; CECIL GARDNER FAMILY, LLC; TERRELL WAYNE EVANS; AND WE FARMS, LLC | HONORABLE TOM GARNER, JUDGE |
| | AFFIRMED |
| APPELLEES | |

**STEPHANIE POTTER BARRETT, Judge**

This appeal arises from an order denying a request for a declaration that a prescriptive

and public easement be established across farmland owned by appellees, John E. Gardner;

Robbie Gardner; Manning Family, LLC; and Cecil Gardner Family, LLC (collectively the

"Gardners"), to an access point on the Cache River in Jackson County, Arkansas, near

Tupelo. Appellants are Pop-A-Duck, Inc., and its individual shareholders, Berry Abney,

Buck Matthews, Larry Vassar, Billy Kyle (collectively "PAD"), and the intervenor, Robert

Hardin ("Hardin"). Appellees Terrell Wayne Evans and his company, WE Farms, LLC

(collectively "Evans"), own property adjoining the Gardners' 220-acre parcel and were in the

process of purchasing the property when suit was filed, thereby stopping the sale.

Following a two-day bench trial, the circuit court entered a final order denying and dismissing the appellants' complaints. Appellants filed a timely Joint Notice of Appeal on October 3, 2019. We affirm.

I. *Background Facts*

The Gardners inherited farm property in Jackson County consisting of approximately 220 acres (the "Property") through which the Cache River flows. PAD's property consists of approximately 80 acres of timberland through which the Cache River (the "River") also flows. This case involves access to a boat landing on the west side of the River that, in order to access, one must cross the Property in an easterly direction over a private farm road (the "Road") to reach the desired river-access point (the "Landing"). Other boat landings are available along the River, albeit miles apart; therefore, the only river access PAD has to the preferred Landing in question is through the Property. Appellants contend that PAD and its shareholders, as well as the general public, have continuously used the Road to bring their boats to the River from Jackson County Road 23 and have parked their vehicles and boat trailers on the landing area while they boated the River for hunting and fishing.

In 2018, the Gardners entered into a contract to sell the Property to Evans, and Evans expressed his intent to install a gate on the Property that would block access to the Road and the Landing. This dispute arose when the appellants learned of Evans's intent to block further use of the Road. On March 1, 2018, PAD sought a declaration of an easement by necessity, a prescriptive easement, and a public easement to the Road and the Landing as well as an injunction to prohibit interference with access via the Road and the Landing. In

2

response, the Gardners filed a counterclaim asserting claims for interference with contract and business expectancy, abuse of process, and slander of title as well as a declaratory judgment declaring that the Road and Landing are private property for the exclusive benefit of the landowners.

Subsequently, Evans erected a gate across the Road, thereby restricting access to the Landing. On September 4, 2018, PAD filed a motion for a temporary restraining order ("TRO") requesting that the circuit court enter an order preventing the appellants from blocking access or otherwise interfering with use and enjoyment of the Road or the Landing. The circuit court entered an order granting the TRO on September 7, 2018. Subsequently, an agreed preliminary injunction was entered that clarified PAD's and others' access rights to the Road and Landing pending trial.

Robert Hardin filed a motion to intervene alleging a right to enforce easements across the Property based on claims of easement by necessity, easement by prescription, and public easement. On February 11, 2019, the circuit court granted intervention to Hardin. Hardin filed his complaint on February 25, 2019, incorporating PAD's allegations set forth in its amended complaint and further asserting that the general public has been using the Road and the Landing to access the River in excess of sixty-five years; therefore he was entitled to a public easement. Hardin further alleged that he himself, PAD, and "others" had maintained and paid for the maintenance of the Road and the parking area beside the Landing for more than sixteen years with no objection from the Gardners.

A bench trial was held on July 22 and 23, 2019.[1]  At trial, each of the appellants testified to their historical use of the Road and the Landing.  Additionally, nine nonparty witnesses were called by the appellants who also testified to their use of the Road and the Landing over varying lengths of years—without express permission—and further provided testimony to having seen other members of the public using the Road and the Landing, primarily during duck-hunting season.  Appellants Hardin, Abney, and Kyle testified they had provided maintenance on the Road and had paid for maintenance to be performed, which all parties agree is necessary during duck season due to vehicles using the Road in wet conditions, thereby resulting in damage to the Property.  In response, appellee John E. Gardner ("Mr. Gardner") testified that while he knew that the Tupelo community and others from surrounding areas used the Road to access the River for duck hunting and fishing, use of his property was permissive.  Appellees also put forth testimony from adjoining landowners who testified that they understood their use of the Road was permissive, one in particular referring to it as a "gentlemen's easement" from Mr. Gardner.

The circuit court issued its findings in an order dated September 5, 2019.  The circuit court also conducted an on-site inspection of the Property prior to trial, which included traveling down the Road at issue and observing the Landing.  In conclusion, the court found that the evidence submitted was insufficient to establish a prescriptive or public easement to the Road and the Landing and dismissed appellants' complaints.  Specifically, the court

---

[1]Prior to trial, the circuit court entered an order dismissing the appellants' claim of easement by necessity and granted the appellees' motion to dismiss their counterclaim.

discredited some of the appellants' witnesses and held that the appellants did not prove overt activity that would make it clear to the Gardners an adverse claim was being exerted. Furthermore, as a result of its on-site inspection and the testimony produced, the circuit court found that the Road is a "field road going to a spot on the river to launch a boat and nothing more"; therefore, it was not a road commonly used by the public. Appellants timely filed a joint notice of appeal on October 3, 2019.

There are four points on appeal: (1) whether the circuit court applied an erroneous legal standard in finding that appellants failed to establish a prescriptive easement; (2) whether the circuit court erred in finding that appellants did not establish a prescriptive easement; (3) whether the circuit court abused its discretion in finding that Abney and Kyle were "less than credible" witnesses; and (4) whether the circuit court erred by denying appellants' request to establish a public easement.

## II. *Standard of Review*

Appellate courts review appeals from bench trials, including declaratory judgments, under the clearly erroneous standard. *Poff v. Peedin*, 2010 Ark. 136, at 6, 366 S.W.3d 347, 350. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *MacKool v. State*, 2012 Ark. 287, 423 S.W.3d 28.

This court gives great deference to a circuit court's findings of fact; mindful that the circuit court is in the best position to hear testimony and determine the credibility of the witnesses. *Save Energy Reap Taxes v. Shaw*, 374 Ark. 428, 435, 288 S.W.3d 601, 604 (2008).

5

It is this court's duty to reverse if its own review of the record is in marked disagreement with the circuit court's findings. *Dopp v. Sugarloaf Mining Co.,* 288 Ark. 18, 702 S.W.2d 393 (1986) (citing *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984); *Walt Bennett Ford v. Pulaski Cnty. Special Sch. Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981)).

III.  *Discussion*

A.  Prescriptive Easement Standard for Undeveloped Property

For their first point on appeal, appellants argue that the circuit court applied the incorrect legal standard in its order by applying a higher standard of proof to include a showing of "hostility of conduct" in its use of the Property, which they allege is required only when the land is "undeveloped."  Specifically, the appellants contend the circuit court failed to make a distinction respecting the type of land at issue, and because the Property  is "developed and cultivated farmland," they were not required to rebut the presumption of permissive use with a showing of hostility of conduct.  In response, the Gardners argue that the appellants failed to preserve this issue on appeal, but nonetheless, the circuit court applied the correct legal standard.

In *Anita G, LLC v. Centennial Bank*, this court reiterated that if land is "unenclosed and undeveloped," there exists a presumption of permissive use that can be rebutted if the user shows "hostility of conduct in the usage of the land."  2019 Ark. App. 217, at 11–12, 575 S.W.3d 561, 569.  The reason for the distinction that unenclosed and unimproved land is deemed permissive was well explained by the supreme court in *Fullenwider v. Kitchens*, 223 Ark. 442, 445, 266 S.W.2d 281, 283 (1954):

The reason for the rule that a passageway over unenclosed and unimproved land is deemed to be permissive is sound and also easily understandable . . . . It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights. On the other hand there would be no reason or basis for such inference or permission on the part of the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation. The right of a person to acquire a passageway over the land of another is somewhat analogous to the right to acquire land by 7 years adverse possession.

Appellants contend that if the land in question is "developed and cultivated farmland," then the user must only demonstrate, by a preponderance of evidence, adverse use for a period of seven years, and there is no presumption of permissive use to overcome. Furthermore, appellants argue that the circuit court's reliance on *Anita* was misplaced because the Property on which they seek an easement is not "unenclosed" or "undeveloped" like the land in *Anita.* We disagree.

First, *Anita* does not stand for the proposition that active farmland is considered "developed." The lower court in *Anita* was not facing the factual issue of whether the land was developed or undeveloped; furthermore, such determination did not form the basis of this court's decision on appeal. We merely acknowledged that the use of "unenclosed, undeveloped" land is presumed permissive and referenced the "hostility of conduct" language that was used in *Merritt Mercantile Co. v. Nelms*, 168 Ark. 46, 269 S.W. 563 (1925). *Anita* did not involve farmland or make a distinction between developed and undeveloped

land. Here, we find that the circuit court's order reflects that the lower court was citing *Anita* and *Merritt* in an effort to explore what acts qualify as "adverse" rather than what qualifies as "hostile conduct."

To support their argument, appellants cite Merriam-Webster Online Dictionary's definition of the word "undeveloped" as being that which is "not used for building, farming, industry, etc.," *see undeveloped*, Merriam-Webster.com, https://www.merriam-webster.com /dictionary/undeveloped (last visited February 18, 2022), and the only testimony used to support their position comes from Mr. Gardner's description of the Property depicted on a map at trial as being "actively farmed." Here, the record reflects that the status of the Property as being "undeveloped" under prescriptive-easement standards was not in dispute. As indicated in *Fullenwider*, the presumption of permissive use over unimproved land is sound because the owner of "unenclosed and unimproved" land is not in a position to readily detect or prevent others from crossing over his or her land. We find that the rationale in *Fullenwider* clearly applies to the Gardners' 220 acres of land. Accordingly, we hold that the circuit court applied the proper legal standard in its analysis.

B. Prescriptive-Easement Analysis

For their second point on appeal, appellants maintain that the testimony and evidence "overwhelmingly" illustrate that they satisfied the requirements for a prescriptive easement because their use of the Property was adverse and overt for decades. In response, appellees argue that the circuit court provided a great deal of reasoning for denying the appellants' prescriptive easement, including its own on-site inspection of the Property;

therefore, the circuit court's order was not clearly erroneous. Additionally, the Gardners point to the appellants' failure to establish continuous or frequent use of the Road.

A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Carson v. Cnty. of Drew*, 354 Ark. 621, 128 S.W.3d 423 (2003). Like adverse possession, "prescriptive easements . . . are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." *Carson*, 354 Ark. at 625, 128 S.W.3d at 426 (citing 25 Am. Jur. 2d *Easements and Licenses* § 45 (1996)). In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Manitowoc Remanufacturing, Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991); *Neyland v. Hunter*, 270 Ark. 412, 605 S.W.2d 485 (1980); *Teague v. Raines*, 270 Ark. 412, 605 S.W.2d 485 (1980). The statutory period of seven years for adverse possession applies to prescriptive easements. *Neyland*, *supra*; *Duty v. Vinson*, 228 Ark. 617, 309 S.W.2d 318 (1958); *Brundidge v. O'Neal*, 213 Ark. 213, 210 S.W.2d 305 (1948). Furthermore, it is well established that whether use of a roadway is permissive or adverse is a factual question; therefore, each case must be determined by the individual facts of the case, and former decisions are rarely controlling on this factual issue. *Owners Ass'n of Foxcroft Woods v. Foxglen*, 346 Ark. 354, 57 S.W.3d 187 (2001).

Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Owners Assoc. of Foxcroft Woods*,

9

*supra*; *Stone v. Halliburton*, 244 Ark. 392, 425 S.W.2d 325 (1968). Mere permissive use of an easement cannot ripen into an adverse claim without clear action that places the owner on notice. *Manitowoc Remanufacturing*, *supra*; *Fullenwider*, *supra*. Some circumstance or act in addition to, or in connection with, the use that indicates the use was not merely permissive is required to establish a right by prescription. *Craig v. O'Bryan*, 227 Ark. 681, 301 S.W.2d 18 (1957).

Additionally, as set forth in greater detail above, the supreme court in *Fullenwider* explained that there is a presumption of permissive use for unenclosed and unimproved land. Therefore, one seeking a prescriptive easement over open, undeveloped land must rebut the presumption of permissive use and demonstrate, by a preponderance of the evidence, that one's use has been adverse to the true owner and under a claim of right for the statutory period of seven years. *Anita*, 2019 Ark. App. 217, at 11–12, 575 S.W.3d at 569.

Appellants maintain that the evidence and testimony presented at trial was more than sufficient to prove that their use of the Property was adverse—not permissive—and overt for decades. To support their argument, appellants cite the testimony presented regarding (1) length of use of the Road and Landing; (2) their maintenance of the Road; and (3) lack of permission received from the Gardners.

1. *Length of use*

The members of PAD all testified as to their historic use of the road as follows: Barry Abney—forty plus years; Buck Matthews—eleven years; Larry Vassar—eleven years; and Billy

10

Kyle—nineteen years. Appellant Hardin testified that he had used the Road and the Landing for over sixty years, dating back to when Mr. Gardner's father owned the Property, and insisted he never sought permission to use the Road or the Landing from either John Gardner or his father. At trial, John Gardner stated that he had no reason to dispute testimony that the Road and Landing had been used for at least forty years. Rather, on appeal, the Gardners argue the appellants failed to show continuous use of the Road and, furthermore, that use of the Road and Landing primarily during duck season supports the circuit court's finding of infrequency of use.

The circuit court held that length of use alone was not enough for the appellants to prevail on a claim of prescriptive easement. To support its finding, the court cited *Clark ex rel. Clark v. Eubanks*, 2019 Ark. App. 49, at 4, 570 S.W.3d 506, 509, wherein this court found that, even though the appellant had used the roadway for more than seven years, "time alone will not suffice to transform permissive use into legal title." In *Clark*, this court held that length of use accompanied by the fact that there had been no objection to such usage was insufficient to establish the right to a prescriptive easement. *Id.*

Here, a significant portion of the appellants' case-in-chief was spent detailing the historical use of the Road and the Landing by the appellants and others, allegedly without permission or any objection from the appellees, until the gate blocking the Road was erected in 2018. However, because length of use is insufficient to establish a claim to a prescriptive easement, we must next examine what evidence the appellants set forth to demonstrate overt activity that was adverse to the ownership rights of the Gardners.

11

## 2. *Maintenance of the road*

Appellants contend their maintenance of the Road qualifies as overt activity that was sufficient to put the Gardners on notice that their use of the Property was adverse to the appellees' interests. In support, appellants reference the testimony of Hardin, who testified that his maintenance on the Road included pulling ditches, grading, smoothing, and applying rock when needed; testimony from appellants Abney and Kyle, who alleged they performed work on the Road; and testimony from appellant Matthews, who testified that the members of PAD regularly contributed money to maintain the Road and the Landing.

In response, the Gardners argue that the issue of maintenance was determined solely on witness credibility because the appellants failed to provide any documentary evidence whatsoever to support the alleged maintenance; therefore, such determination was within the province of the fact-finder, and no clear error was committed. Furthermore, appellees cite the testimony of Mr. Gardner wherein he acknowledged some of the appellants had performed maintenance on the Road but that any such repairs were made with the understanding that if they used the Road to access the Landing and caused damage to the Road, it was their obligation to either repair the Road or contribute money to Mr. Gardner for repairs.

The circuit court made various rulings throughout its order regarding the effect the alleged maintenance had on its decision to deny the prescriptive easement. They were as follows:

- Barry Abney is found to be less than credible. His testimony at trial was not consistent with what he had given in deposition per his cross examination. There were several questions asked of the witness on cross to which he answered he did not recall or could not remember, specifically about road repairs, although he was more specific on direct. At one point the Court noted (in the Court's handwritten notes) that Mr. Abney was being evasive.

- Billy Kyle is also found to be less than credible. When asked by the Court about the amount of money that Plaintiffs spent on the road, he did not know. When the Court specifically asked about the $10,000.00 figure the Plaintiffs pled in their Complaint, he responded it was a guess. It is difficult to give any credibility or weight to this Plaintiff's testimony when one of the Plaintiffs says the amount claimed in their Complaint was a guess.

- In the present case, the Plaintiffs and the Intervenor continued to fix the road if they damaged it (per the Defendant's rule) and also to give the Defendant money for the road repair. It is plain that the Plaintiffs and the Intervenor did recognize in the Defendant the authority to prevent or permit the continued use of the road.

- The Plaintiffs and Intervenor made much of the fact that they worked on the road throughout their time of use and further that they gave money to the Defendants on numerous occasions for road repair. If the Defendant was not in control of his road/property, why would the Plaintiffs give him money for road repair? This is clear evidence to the Court that the Plaintiffs believed the Defendant was in charge of his property/the road. This action by the Plaintiffs and Intervenor is consistent with Defendant's testimony that his rule was that if they damaged the road, they had to fix it. Plaintiffs' compliance with the Defendant's rule is strong evidence that Plaintiffs believe that the Defendant was/is in complete control of the road. Additionally, the Plaintiffs put on proof that the Defendant stated that Robert Hardin, the Intervenor, was considered the "road foreman" or "road superintendent." If Defendant was not in control of this road on his property, why would the Plaintiffs and other users comply with his rules of repair and acknowledge his designation of road foreman.

- Therefore, the Court does not find that the use of this road was done expressly without the permission of the Defendant, just because the Defendant did not

13

expressly say to the Plaintiffs or other witnesses the words, "I give you permission."

At trial, Mr. Gardner did not dispute that Hardin performed maintenance on the Road. In fact, Mr. Gardner testified about a conversation he recalled having with Hardin in 2016 at the post office wherein Hardin made reference to the condition of the Road due to the area becoming more crowded. Gardner testified he told Hardin that if he wanted "to do some road grading and whatnot, go right ahead" and then jokingly said "we'll make you the road foreman." While Hardin testified that he could not remember having that specific conversation at the post office, he acknowledged that the only work he did on the Road was to repair damage that he himself or other duck hunters had caused as a result of their use. When questioned as to the specific amount Hardin had spent on repairing the Road throughout the years, he could not remember. After counsel refreshed his recollection with his response to a pretrial interrogatory, Hardin testified that repairs were approximately $14,406. However, when asked how the amount was calculated, he admitted it was merely an "educated estimate."

Two members of PAD, Kyle and Abney, testified that they had performed maintenance on the Road as well. Mr. Gardner testified that he had no knowledge of their maintenance on the Road and never personally saw them performing maintenance. Kyle testified that he had performed maintenance on the Road approximately three times over a period of twenty years. When asked about the type of gravel used to fill up holes on the Road, Kyle testified that he could not recall specifics. Kyle also could not recall the amount

14

of money PAD had spent repairing the Road; rather, he stated that the $10,000 referenced in the complaint was merely a "guesstimate." Of particular importance, when asked about prior testimony regarding cash collected yearly by members of PAD for various repairs to the Road, Kyle testified that "[i]f we needed – say we was going to take up money for gravel, we'd ask everybody. They'd put money up, and then it would get to John Ed."

Appellant Abney also claimed to have done maintenance on the Road; however, his testimony was similarly lacking in specifics. Throughout his testimony, Abney was asked in what years he had performed maintenance to the Road and stated several times that he could not remember. When pressed further on the issue on cross-examination, Abney testified that in 2017 and 2018, he did some bush hogging and that he was unsure if he did any gravel work between 2014 and 2016; rather, Hardin had taken over the majority of the work and was in charge of the maintenance of the Road. Furthermore, Abney testified he had given money to Mr. Gardner for repairs to the Road caused by PAD during duck season.

The testimony was conflicting regarding the reasons why the appellants performed maintenance to the Road. However, after listening to all the testimony, the circuit court found that the appellees remained in control of the Road, and appellants' actions were consistent with Mr. Gardner's testimony that he expected those who caused damage to the Road to repair the damage. The circuit court placed greater weight on Mr. Gardner's testimony that maintenance on the Road was performed due to damages caused during their usage, "per the Defendant's rule" as the circuit court called it, as opposed to any claim of right.

15

Furthermore, none of the appellant witnesses could recall with any specificity who had done what maintenance on the Road or when; no documentary evidence on maintenance was presented to the circuit court; and none of the appellants testified, with any reasonable certainty, as to the amount they had spent on labor or materials. Most notably, the appellants themselves admitted that they had paid Mr. Gardner money for road maintenance. Given the strong deference appellate courts give to the circuit court's credibility determinations, we cannot say that the lower court erred in holding that the maintenance or "acts" was insufficient to put the Gardners on notice that appellants were making a claim of right to the Road. Additionally, the record supports the circuit court's finding that the appellants recognized Mr. Gardner's authority to prevent or permit their continued use of the road. Accordingly, we find no clear error in the circuit court's finding that appellants' actions in maintaining the Road did not constitute overt activity sufficient to put the Gardners on notice of an adverse claim.

### 3. *Permissive use*

Appellants maintain that their use of the Property was not merely permissive, but adverse. Specifically, they allege adversity was bolstered by several witnesses' testimony that they used the Property without permission from the Gardners. In response, appellees maintain that the testimony from the nonparty witnesses is irrelevant to the private prescriptive-easement analysis but rather is applicable only in the context of appellee Hardin's cause of action for a public easement.

Regarding permission, the circuit court held as follows:

16

- After hearing both men testify[Hardin and Mr. Gardner], the Court believes the conversation as testified about by the Defendant did occur and that Robert Hardin did ask if the posted signs applied to him, which is evidence that he believed he needed the Defendant's permission and that his position was subordinate to that of the landowner.

- The Court does not believe the Plaintiffs and Intervenor have achieved their burden of proof on the issue of permission . . . Without recanting each person's testimony there were several witnesses who testified they used the road and the landing without asking the Defendants.  However, the fact that they did not verbally ask is not the whole matter. . . the Court does not find that the use of this road was done expressly without the permission of the Defendant, just because the Defendant did not expressly say to the Plaintiffs or other witnesses the words, "I give you permission." Additionally, the Defendant testified that he had never told anyone they couldn't use the road and only on one occasion had asked someone to leave who was driving out in the field, which is additional evidence that he was and is in control of the property.

As discussed above, there must be some evidence that the appellants' usage of the Property was adverse or hostile to the ownership rights of the Gardners.  While appellants argue on appeal that Mr. Gardner knew individuals, including the appellants, were using the Road without his permission for years, this argument is unpersuasive because, by law, the appellants' use of the Property in question was presumed permissive.  Furthermore, Mr. Gardner didn't dispute that Hardin as well as others have been using the Road, primarily during duck season, for many years.  Our court is cognizant of the fact that there exists caselaw wherein the specific length of time and circumstances, including the acquiescence to long-time use, under which a roadway was open and used has been sufficient to establish adverse use; however, it is well established that every prescriptive-easement case must be determined by the individual facts of each case; thus, former decisions are rarely controlling.

17

Moreover, it is not within the province of our court to reweigh the evidence and perform credibility determinations. The circuit court's finding that the appellants' failed to rebut the presumption of permissive use with some overt act that was adverse or hostile to the ownership of Gardner was supported by the record. Accordingly, we conclude that no clear error was committed by the circuit court in finding that appellants failed to establish a right to a prescriptive easement on the Property.

## C. Credibility Determinations

For their third point on appeal, appellants argue that the circuit court erred in finding that Abney and Kyle were "less than credible" witnesses. Appellees contend that because there existed conflicting testimony between the parties, especially on the issue of permission, it was the circuit court's obligation to resolve the inconsistencies in the evidence.

It is the function of the finder of fact, and not the reviewing court, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *Woods v. State*, 2013 Ark. App. 739, 431 S.W.3d 343. Resolution of conflicts in testimony and assessment of witness credibility is for the finder of fact. *Id.* The court, as the fact-finder at a bench trial, may accept or reject any part of a witness's testimony, and its conclusion on credibility is binding on this court. *Brown v. State*, 2009 Ark. App. 873. This court will not second-guess the fact-finder's credibility determinations. *Id.* It will disregard testimony that the fact-finder has found to be credible only if it is so inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ about it. *Conte v. State*, 2015 Ark. 220, 463 S.W.3d 686.

The circuit court's credibility determinations of Abney and Kyle were quoted above, as was the court's reasoning. In support of its decision, the court cites the inconsistencies in Abney's deposition and cross-examination; Abney's evasiveness; Abney's and Kyle's limited recall as to the specific maintenance that they did on the Road; and their admission that amounts allegedly spent on repairs as pled in the complaint was a guesstimate. The appellants' argument, therefore, that the circuit court's credibility determinations were unsupported is without merit. Mr. Gardner's testimony, to which the circuit court afforded greater weight, was not inherently improbable or so clearly unbelievable that reasonable minds could not differ; accordingly, there is no basis for our court to overturn the circuit court's credibility determinations of Kyle or Abney.

## D. Public-Easement Analysis

For their last point on appeal, appellants argue that the circuit court clearly erred by denying the appellants' request to establish a public easement. Specifically, they maintain the record is clear that Mr. Gardner had, for many years, acquiesced to the use of the Road and the Landing by various people, many unknown to him, thereby satisfying the elements required for a public easement. In response, appellees highlight that most of the witnesses admit having used the Road with very little frequency, which, in effect, rightfully supports the circuit court's conclusion to deny the general public an easement over the Property.

The elements for a public prescriptive easement are the same as for a private prescriptive easement except that the easement is extended to the general public and not merely to a party seeking establishment of the easement. *Gazaway v. Pugh*, 69 Ark. App. 297,

19

12 S.W.3d 662 (2000). This court has held that when a roadway is used by the public openly, continuously, and adversely for a period of seven years, the public acquires an easement by prescription. *Hall v. Clayton*, 270 Ark. 626, 606 S.W.2d 102 (1980). When testimony is in conflict or is evenly balanced, our appellate courts are guided by the circuit court's findings as long as the court has not erroneously applied the law. *Id.*

The circuit court found as follows:

- The court does not find that the general public have been using this road. While there is no doubt that a number of people have used the road, it is almost exclusively limited to mainly duck hunters, one or two deer hunters and a few people for fishing. This road is not a through road, it is a road to river landing only, it "falls through" according to testimony and has been impassable. This road is not county maintained, no testimony provided it had a street sign or any identification from any source such as the County 911 address system.

- From the Court viewing of the property, this road is a field road going to a spot on the river to launch a boat and nothing more. Based upon the testimony, the Court finds, although it is used by numerous people it is not a road used by the public.

On appeal, the appellants cite *Gazaway*, wherein this court upheld the circuit court's decision to declare a public easement over a gravel road and turn-around area and held that the presumption of permissive use was overcome. *Gazaway* similarly involved access to a boat ramp and an area on the river that was accessed by a road across Gazaway's property. After Gazaway erected a gate on the gravel road, a group of hunters and fishermen joined together and brought suit against Gazaway to prevent him from interfering with their use of the road. The circuit court found that the public's use of the property was not permissive and granted a public easement over Gazaway's property. On appeal, Gazaway argued that

20

the facts did not show that use of the road was adverse, and further, there was no evidence of hostility.

This court declared *Gazaway* "to be a very close case"; however, it found the testimony of Gary Cole, an Arkansas Game and Fish Commission enforcement officer, tipped the balance in favor of those seeking the easement. 69 Ark. App. at 303, 12 S.W.3d at 666. Cole testified that the road in question was used year round by sportsmen, with approximately seventy-five to one hundred vehicles using it on opening weekend of duck season and fifty to sixty vehicles using it during the week. As a result, this court held that the sheer number of hunters and fishermen present on the property suggested that not all of the use was by family or friends. *Id.* Accordingly, there was acquiescence to long-time use, and the presumption of permissive use had been overcome. *Id.*

Here, the circuit court found that the facts in *Gazaway* were distinguishable from the present facts regarding the number of users, decisive testimony by a witness, and evidence that the county had performed maintenance on the Road. Specifically, the court noted that the largest number testified to here was eighteen on only one occasion, which differs significantly from the seventy-five to one hundred vehicles the enforcement officer testified to in *Gazaway*.

On appeal, the appellants continually cite the testimony of nonparty witnesses, some who testified they had used the Road for decades. Again, appellants are effectively asking this court to reweigh the evidence because they disagree with the circuit court's conclusion rather than making an assertion that the circuit court misapplied the law. The testimony,

21

however, supports the circuit court's finding that use of the Road is limited to mainly duck hunters and fishermen. Furthermore, Mr. Gardner's testimony clearly reflects that it was common knowledge that locals were welcome to use the Road for river access to fish or hunt.

We also find appellants' argument unpersuasive that because they presented testimony from residents of other cities who claimed to use the Road without the Gardners' knowledge, they met the requirements of establishing a public easement. As noted by the appellees, the nature of the Property is farmland, and because it is common for farms with hundreds of acres to have open farm roads, it is impossible to police their use without the obstruction of gates, which both Hardin and Kyle, who are farmers, admit are very aggravating and disruptive to farmers. We find, therefore, that evidence of scattered use by residents outside of the Tupelo community is inconsequential because the actions of those witnesses were insufficient to have placed the Gardners on notice of an adverse claim by the public. *See Craig*, 227 Ark. 681, 301 S.W.2d 18 (reversing the lower court's establishment of a public easement, in part, because while there was evidence that the roadway had been used for some thirty years, none of the witnesses testified to seven years of consecutive or continuous use).

Finally, the appellants make no reference to the fact that the circuit court performed its own on-site inspection to view the Property prior to trial. After personally traveling down the Road to the Landing and observing the condition of the Road, the circuit court held that "this road is a field road going to a spot on the river to launch a boat and nothing more." Having personally observed the Road, the court gave weight to testimony from various

22

witnesses, including appellant Hardin, that the Road regularly floods and becomes impassable or "falls through." This supports appellees' argument that the condition of the Road frequently makes its use impossible for hunters and fishermen, who are admittedly the members of the general public who primarily use the Road. Appellees contend that the fact-finder has no better evidence of the nature of the land than its own personal observation. We agree.

Here, the circuit court's decision was based on a correct application of the law and, furthermore, was supported by the record and the court's personal observation of the Property; therefore, we conclude that no clear error was committed in the court's refusal to grant a public easement over the Property. At most, the testimony regarding the frequency of use is susceptible to differing conclusions; therefore, this court must abide by the circuit court's estimation of the evidence. Granting a public easement over private farmlands because a landowner either permits "locals" to use the property or fails to object out of a sense of neighborliness or rural custom would have unintended consequences. The circuit court's denial of a public easement is affirmed.

IV. *Conclusion*

Considering the evidence and being mindful of our standard of review, we find no clear error in the circuit court's ruling.

Affirmed.

GRUBER and VIRDEN, JJ., agree.

23

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn* and *Tess E. Stewart*, for separate appellants Pop-A-Duck, Inc., Berry Abney, Buck Matthews, Larry Vassar, and Billy Kyle.

*Dover Dixon Horne PLLC*, by: *Monte Estes*, for separate appellant Robert Hardin.

*McMullan & Brown*, by: *Marian Major McMullan*, for separate appellees John E. Gardner; Robbie Gardner; Manning Family, LLC; and Cecil Gardner Family, LLC.

*John R. Clayton & Associates*, by: *John R. Clayton*, for separate appellees Terrel Wayne Evans and WE Farms, LLC.